# AETNA LIFE INSURANCE COMPANY *v.* MOORE, ADMINISTRATOR OF SALGUE.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 33.   Argued November 3, 1913.—Decided December 22, 1913.

The character of the covenants of a contract for life insurance depends upon the law of the State where made. The Code of Georgia expressly provides that the application must be made in good faith and that the representations are covenanted by the applicant as true, and any variations changing the character of the risk will void the policy.

The law of Georgia as determined by its highest court, prior to the adoption of the Code, was that insurer and insured may make their own contract and determine what representations are material.

The highest court of Georgia has decided that mere immaterial matters, although declared to be warranties, do not void a policy even though the policy declares them to be such, and that under the Code the parties themselves could not contract to make immaterial matter material.

In order for an insurance company, defending on the ground of false statements in the application, to have a verdict directed, it must establish that the representations were material to the risk and were untrue.

A representation that the applicant for insurance has never been rejected by any company, association or agents is material to the risk and is not true if he has withdrawn an application at the suggestion

of the medical adviser, and with the knowledge that the company to whom the application was made was about to reject it.

Applicants for insurance are competent to make agreements in the policy that no person other than the executive officers of the company can vary its terms, and such an agreement is binding when made.

A decision of the highest court of a State on a principle of general jurisprudence is not controlling upon this court. *Kuhn* v. *Fairmont Coal Co.*, 215 U. S. 349.

Where two cases are consolidated by the court below because it appears reasonable to do so under § 921, Rev. Stat., and this court doubts the reasonableness of the consolidation, it need not pass upon that subject definitely if, as in this case, a new trial is ordered on other grounds.

. THE facts, which involve the validity of a verdict and judgment on a policy of life insurance, are stated in the opinion.

*Mr. A. L. Miller,* with whom *Mr. M. D. Jones, Mr. George S. Jones, Mr. Walter Defore, Mr. Wallace Miller* and *Mr. Charles H. Hall, Jr.,* were on the brief, for petitioner.

*Mr. Jesse Harris* and *Mr. Minter Wimberly,* with whom *Mr. Alexander Akerman* was on the brief, for respondent:

Consolidating the causes was a proper exercise of the discretion of the trial court under § 921, Rev. Stat. *Mutual Life Ins. Co.* v. *Hillman,* 145 U. S. 285.

There was no error in the failure and refusal of the court to direct a verdict in favor of the insurance company.

While the policy is a Georgia contract, and the law of Georgia will, therefore, be applied in construing and considering the contract, the construction of the Georgia law will be taken in connection with the law as construed by the courts of the United States relating to contracts of life insurance. For the statute law of Georgia applicable to the case, see 1 Code of Georgia of 1910, §§ 2479–2482, and § 2499.

The evidence for both the plaintiff and the defendant in the court below clearly establishes the fact that there was no fraudulent concealment of any material fact and no wilful concealment of any fact that would enhance the risk.

All material facts were made known to the agents of the defendant company. It cannot be said that there was any fraudulent concealment as to these questions by the insured. This being true, the policy will not be voided. *Ley* v. *Metropolitan Life Ins. Co.,* 120 Iowa, 203; *Patten* v. *U. S. Life Ins. Co..* 141 N. Y. 589; Vol. 25, Cyc. of Law & Procedure, 796.

The refusal of the court to give the instructions requested by plaintiff in error was proper. *O'Connell* v. *Supreme Conclave,* 102 Georgia, 143; *Farrell* v. *Security Life Ins. Co.,* 125 Fed. Rep. 684.

The refusal of the court to so charge was not error because the representations and warranties made by the applicant that he did not have heart trouble were true, and this was a question of fact for the jury to decide.

The insurance company is estopped from alleging that this answer was not the truth, as the agents who solicited the insurance and the medical examiner for the company, who examined the deceased, acted as the agents of the insurance company and the insurance company is bound thereby. *Union Mut. Ins. Co.* v. *Wilkinson,* 13 Wall. 222; *American Life Ins. Co.* v. *Mahone,* 21 Wall. 152; *New Jersey Mut. Ins. Co.* v. *Baker,* 94 U. S. 610; *Clubb* v. *American Accident Co.,* 97 Georgia, 502; *German-American Ins. Co.* v. *Farley,* 102 Georgia, 735; *Continental Ins. Co.* v. *Chamberlain,* 132 U. S. 304; *Springfield Fire Ins. Co.* v. *Price,* 132 Georgia, 687; *Johnson* v. *Aetna Ins. Co.,* 123 Georgia, 404; *Mechanics Ins. Co.* v. *Mutual Bldg. Assn.,* 98 Georgia, 262; *Wood* v. *American Fire Ins. Co.,* 149 N. Y. 382.

The answer given by the applicant may have been in-

complete, but the agents of the company knew that he had consulted at least two other physicians, and they did not deem it necessary to insert this fact in the answer. Therefore, the action of the insurance company's agent, which led the applicant to believe that it was unnecessary to give the names of all the physicians whom he had consulted, was such action as to estop the company from insisting upon a forfeiture for the failure to so state. *Phœnix Mut. Ins. Co.* v. *Doster*, 106 U. S. 30; *Hartford Life Ins. Co.* v. *Unsell*, 144 U. S. 439; *N. Y. Life Ins. Co.* v. *Eggleston*, 96 U. S. 572.

If the answer was not complete, or imperfectly answered, the issuance of the policy without further inquiry, especially when the insurance company had been put on notice, as in the case at bar, amounts to a waiver of the objection, and makes the omission immaterial. *Phœnix Mut. Ins. Co.* v. *Raddin*, 120 U. S. 183.

It was not necessary for the applicant, in answer to the question, to state the names of physicians he consulted for merely slight or temporary indispositions. *McLain* v. *Provident Ins. Co.*, 110 Fed. Rep. 80; *Hubbard* v. *Mutual Reserve Fund*, 100 Fed. Rep. 719.

This particular question is not a warranty, but is a representation. *Minn. Mut. Ins. Co.* v. *Lee*, 230 Illinois, 273.

Whether or not the statements made in the application are material to the risk is a question for the jury and not a question of law for the court.

Misstatements by way or representations of warranty, which are made through fraud of the company's agent, cannot be relied on by it to defeat the policy, and especially is this so where the insured is misled by the agent into making the false statements. *Standard Life Ins. Co.* v. *Frazier*, 76 Fed. Rep. 705; 25 Ency. of Law and Procedure, 803; *Globe Mut. Ins. Co.* v. *Myer*, 118 Ill. App. 155.

Whether or not the alleged falsities of the answers of

the insured would void the policy, should be submitted as a question of fact for the jury, in order to determine whether or not the answers were made *bona fide* by the applicant. *Moulor* v. *Am. Life Ins. Co.*, 111 U. S. 335; *Fidelity Mut. Life Assn.* v. *Jeffords*, 107 Fed. Rep. 402.

All policies of insurance and applications must be construed against the insurer and in favor of the insured, and all statements in the application will be construed as representations rather than warranties. *Havan* v. *Scottish Union Ins. Co.*, 186 U. S. 423; *Phœnix Mut. Life Ins. Co.* v. *Raddin*, 120 U. S. 183; *Home Life Ins. Co.* v. *Fisher*, 188 U. S. 726; *First Natl. Bank* v. *Hartford Ins. Co.*, 195 U. S. 673; *Franklin Fire Ins. Co.* v. *Vaughn*, 92 U. S. 516; *Mutual Benefit Life Ins. Co.* v. *Higginbotham*, 95 U. S. 380; *Knickerbocker Life Ins. Co.* v. *Trefz*, 104 U. S. 197; 25 Cyc. 796, 815; *Penn. Mut. Life Ins. Co.* v. *Mechanics' Savings Bank*, 72 Fed. Rep. 413.

MR. JUSTICE McKENNA delivered the opinion of the court.

Action on a life insurance policy for $6,000 issued upon the life of John A. Salgue, the intestate of respondent. It was tried to a jury, resulting in a verdict and judgment for respondent. The judgment was affirmed on writ of error to the Circuit Court of Appeals by a *per curiam* opinion. This certiorari was then granted.

The questions in the case are based on certain statements made by Salgue which, it is contended by petitioner (herein called the insurance company), became a part of the policy and constituted warranties.

The following are the material provisions of the policy and the application:

"This policy of insurance witnesseth: That the Aetna Life Insurance Company, in consideration of the statements, answers and warranties contained in or endorsed

upon the application for this policy, which application is copied hereon and made a part of this contract, and in further consideration of the annual premium . . . hereby insures the life of John A. Salgue.   .   .   .

"This policy is issued and accepted subject to the conditions, provisions and benefits printed on the reverse of this page, which are hereby referred to and made a part hereof.   .   .   .

"Conditions, provisions and benefits which are made a part of this policy:

"Section 1. This policy shall not take effect until the first premium hereon shall have been actually paid during the lifetime and good health of the insured.  ·   .   .   .

"Section 7. All agreements made by said company are signed by one of its executive officers.  No agent or other person not an executive officer can alter or waive any of the conditions of this policy, or make any agreement binding upon said company."

Copy of the application:

"Being desirous of insuring my life with the Aetna Life Insurance Company, I do hereby declare and warrant that I am in good health, of sound body and mind, and that the following statements signed by me are full, correct and true; and that I have no knowledge or information of any disease, infirmity or circumstance not stated in this application which may render insurance on my life more hazardous than if such disease, infirmity or circumstance had never existed; and I do hereby agree that the declarations and warranties herein made, and the answers to the following questions, together with those signed by me on the second page of this application, shall be the basis and form part of the contract (or policy) between me and the said company, and that if the same be in any respect untrue, said policy shall be void; and I further agree that the insurance hereby applied for shall not be binding upon said company until a policy has been issued, nor until

the amount of premium as stated therein has been received by said company, or its authorized agent, during my lifetime and good health, and a receipt given therefor, signed by an executive officer of said company; and I further agree that no statement or declaration made to any agent, examiner or any other person, and not contained in this application, shall be taken or considered as having been made to or brought to the notice or knowledge of said company, or as charging it with any liability by reason thereof; and I understand that all policies and agreements made by the said Aetna Life Insurance Company are signed by one or more of its executive officers, and that no other person can grant insurance or make any agreement binding upon said Company."

The application also contained questions addressed to the insured by the examining physician and the answers by him, among others, as follows:

"14. What are the names and residences of all the physicians whom you have personally employed or consulted during the last five years?"

Answer: "Dr. James T. Ross, Macon, Ga."

"16. Has any proposal or application to insure your life been made to any company, association or agent on which a policy of insurance is now pending?  Or has any such proposal or application ever been made for which insurance has not been granted, or on which a policy or certificate of insurance was not issued in full amount, and of the same kind as applied for?  If so, state particulars and the names of all such companies, associations or agents."

Answer: "None."

"19. Has any physician expressed an unfavorable opinion upon your life with reference to life insurance?"

Answer: "No."

"21. Have you ever had any of the following diseases? Answer 'yes' or 'no' opposite each.  If 'yes,' state the

date, duration and severity of illness. . . . Disease of the heart?" . . .

Answer: "No."

"23. Are you subject to dyspepsia, dysentery or diarrhœa?" Answer: "No."

"24. Have you had during the last seven years any disease or severe sickness? If so, state the particulars of each case and the names of the attending physicians."

Answer: "No."

There was discussion between Salgue and the examining physician in regard to the condition of Salgue's heart. His first statement was that he did not have heart disease, though he had been told he had. The physician explained to him the symptoms of the disease, and he replied that he did not have any of them and never had been treated for heart trouble. He had, he further said, consulted two doctors, Little and Winchester, and one of them told him he had heart disease "and scared him so." The other told him that he did not have any signs of it. And the recollection of the physician was that Salgue referred to Dr. Ross as having treated him for something several years previously. At the end of the discussion the physician put down the answer "No." He also reported that Salgue's respiration was "full, easy and free. O. K." and that "auscultation" did not "indicate enlargement or disease of the heart of any kind."

There was testimony to the effect that about June 15, 1905, and prior to the application to the Aetna, Salgue applied to the local agent of the Penn Mutual Insurance Company at Macon for a policy of $6,000. The company's medical examiner refused to pass him, telling him that he had heart disease and advising him to see his family physician, Dr. McAfee. Salgue consulted Dr. McAfee and was informed by him that he had heart disease.

The contentions of the insurance company are based (1) upon a request for the direction of a verdict in its

favor; (2) the denial of requests for special instructions. We may confine our consideration to the special requests.

There was controversy as to whether Salgue had heart disease. We have seen the various opinions of the examining physicians. Salgue was a strong man physically and his strength was illustrated by instances. At one of his examinations he easily picked up and removed a large box of melons without any effect on his heart action. An effort of strength on another occasion was immediately detrimental, causing an aneurism which progressively developed and produced a rupture of the blood vessel and his death. By the advice of his physician he had quit work and had gone to a resort called Indian Springs. He remained there about ten days and on his way home died suddenly on the cars.

It is not necessary to give at length the charges requested. They embrace the propositions (1) that the application and its statements, warranties and covenants became part of the contract of insurance, and that any variation from them whereby the nature, extent or character of the risk was changed, would affect the policy whether the statement was made by the applicant in good faith, not knowing they were untrue, or made wilfully or fraudulently. And so also as to the answers to the questions put to Salgue as to his health, freedom from heart disease, the physicians he had consulted, the applications for insurance which he had made which were rejected or not accepted. (2) Under the terms of the policy the application constituted part of it, the answers to the questions were covenanted and warranted and Salgue was bound thereby without regard to his good faith in making them; or that they were representations material to the risk by which he was bound without regard to his good faith, and that therefore the answers, if untrue, would make the policy void. (3) The provisions of the policy that no statement or declaration made to an agent, exam-

iner or any other person, and not contained in the application, shall be taken or construed as having been made to or brought to the knowledge of the company, or as charging it with any liability by reason thereof, was binding on Salgue. So also the limitations on the powers of the agents and of what may have been said to them or by them. And further that if the answers in the application were incorrect it was Salgue's duty to report them as incorrect to the company, and, failing to do so, he was presumed to have accepted his policy upon the faith of them. It was, therefore, immaterial what may have been said by or to the agent or to the medical examiner which was not reduced to writing and presented to the officers of the company at the home office.

The charge of the court was very long—too long even to attempt to condense. It was antithetical to the special requests made by the insurance company. Applying certain general principles which it expressed, the court said:

"To make them distinctly applicable to your duty, you are instructed that you must determine from all the facts, first, did Salgue make a misrepresentation or concealment of a fact of which he had knowledge. If he did not, the defense on this point must fail. Second, if he did, was such misrepresentation or concealment so material that it would have influenced one or both of the defendants not to issue the policy of insurance upon the respective applications. And third, in connection with this your inquiry will be, if such material misrepresentation or concealment as would have caused the defendants or either of them to withhold insurance was made, was it by Salgue wilfully or fraudulently done. In the absence of wilful or fraudulent misrepresentation or concealment of a material fact the policy stands good and the insurance company must pay what it promised to pay by its policy, when it accepted the premium of the applicant."

We may note here that Salgue declared in his applica-

tion that he was "in good health"; that the statements made by him were "full, correct and true"; and that he had no knowledge of "any disease, infirmity or circumstance" which might "render insurance on his life more hazardous than if such disease, infirmity or circumstance had never existed." He also agreed that "the declarations and warranties" therein made, and the answers to the questions "should be the basis and form part of the contract (or policy)" between him and the company, "and that if the same be in any respect untrue" the policy should be "void."

The policy is conceded to be a Georgia contract. The character of its covenants, therefore, depends upon the law of that State declared in § 2479 of its Code, as follows:

"Application, Good Faith. Every application for insurance must be made in the utmost good faith, and the representations contained in such application are considered as covenanted to be true by the applicant. Any variation by which the nature, or extent, or character of the risk is changed will void the policy." [1]

But who is to decide—the court or jury—whether a variation be of the quality described? We have seen

---

[1] SEC. 2480. Effect of misrepresentation. Any verbal or written representations of facts by the assured to induce the acceptance of the risk, if material, must be true, or the policy is void. If, however, the party has no knowledge, but states on the representation of others, *bona fide*, and so informs the insurer, the falsity of the information does not void the policy.

SEC. 2481. Concealment. A failure to state a material fact, if not done fraudulently, does not void; but the wilful concealment of such a fact, which would enhance the risk, will void the policy.

SEC. 2483. Wilful misrepresentation voids policy. Wilful misrepresentation by the assured, or his agent, as to the interest of the assured, or as to other insurance, or as to any other material inquiry made, will void the policy.

SEC. 2499. Law of fire insurance applicable. The principles before stated as to fire insurance, wherever applicable, are equally the law of life insurance.

how explicit the policy is, and this court in *Jeffries* v. *Economical Life Insurance Company,* 22 Wall. 47, and *Aetna Life Insurance Company* v. *France,* 91 U. S. 510, held that the parties to the contract may make the inquiries and answers material and that therefore their materiality is not open to be tried by a jury.

These cases recognize the right of the insurer and the insured to make their own contract and determine for themselves what representations shall be material.

How far has this simple rule and the right of the parties been changed by the Georgia Code? In *German-American Life Association* v. *Farley,* 102 Georgia, 720, 733, it was decided to be the established law of that State that mere immaterial matters, though incorporated in an application for insurance and declared to be warranties, do not avoid the policy, and that this was so imperatively the law of the State under the provisions of the Code that the parties could not contract to make immaterial matter material. The court, however, said: "Of course, what is in any degree material should be allowed its due effect; but the absolutely immaterial should count for nothing."

In *Supreme Conclave* v. *Wood,* 120 Georgia, 328, the Code again came up for construction and the statements of the insured were declared to be representations, not warranties, and that it was the purpose of the Code to get away from what the court denominated the "finer distinctions and strained constructions" of the cases. It was therefore held that under the Code of the State "a policy cannot now be avoided upon the ground of the falsity of a representation, though warranted, unless that representation be material and the variations from truth be such as to change the nature, extent, or character of the risk." But the court further held that if the representations have such variation, although the applicant may have made them in good faith, not knowing that they were untrue, if they were made the basis of the contract,

such contract is void. "It is therefore immaterial," the court declared, "whether the warrantor acted in good faith in making them."

The facts of the case were very much like those of the case at bar. The applicant represented himself, in answer to a question, as not having heart disease. Of this representation the court said that it "was certainly a material one, and doubtless the company acted upon it." And further: "It is scarcely conceivable that the company would have issued the policy if the applicant had answered that he was or had been afflicted with heart disease, or even if he had answered doubtfully. We think that if the answer made was untrue, the plaintiff below cannot recover."

The judgment in the case was reversed upon the ground, among others not necessary to be considered, of error in the instruction of the court "that if Wood had heart disease and did not know it, the failure on his part to disclose it could not avoid the policy." There was dispute as to the fact but the court did not pass upon it, remitting it as a question for the jury to decide at the next trial.

In *Southern Life Ins. Co.* v. *Wilkinson,* 53 Georgia, 535, 549, 550, after commenting on the difference the cases make between warranties and representations, the peremptory character of the former, their truth being the only question, the effect of the latter being determined by their materiality to the risk, the court said the Code of the State determined the character of the statements. The court quoted § 2479, which we have given, and § 2480, which provides that "any verbal or written representation of facts by the assured to induce the acceptance of the risk, if material, must be true or the policy is void," and said that "the proper construction is that if there be any variation in them from what is true, whereby the nature or extent or character of the risk is changed, the policy, if it makes them the basis of the contract of insurance,

will be void, and that this will be so whether they are or are not wilfully or fraudulently made.

It is, however, contended by respondent that the questions asked in the application were truthfully answered, or, at any rate, whether they were truthfully answered was a question for the jury. And it is insisted that the answers of Salgue in regard to other insurance and the action thereon by other companies were correct.

But granting that the truthfulness of the answers was a question for the jury, the testimony was conflicting, and, as the verdict was general, it is not possible to say what view the jury took of the conflict, or that it was necessary to resolve it in view of the charge of the court, or how they would have resolved it if instructions requested by the insurance company had been given.

We think there was error also in refusing other requests for instructions. We have seen questions were addressed to Salgue as to the names and residence of the physicians he had employed or consulted, and whether any physician had expressed an unfavorable opinion upon his life with reference to life insurance, and also whether any proposal or application to insure his life was pending in another company or, if made, had not been granted. To the first question he gave the name of only one physician. There was testimony that he had consulted others. To the second question he answered, "No." There was testimony that the answer was untruthful. To the third question he answered, "None." The truthfulness of the answer is asserted notwithstanding it appeared from the testimony that he had made application to the Penn Mutual Company, which application had not been granted. The evidence was that the medical examiner had refused to pass him because he was of opinion that he, Salgue, had heart disease and so reported to the agent of the company. The agent told Salgue if he, Salgue, would pay the doctor's fee to the company he, the agent, would withdraw the

application before it reached the company and that Salgue "could answer in the future that he had never been rejected by any company"; and the agent testified "that it is customary entirely with agents to stop examinations that way."

It is contended by respondent that this testimony shows that Salgue's application to the Penn Mutual was not rejected but was withdrawn; and, besides, whether it was rejected or withdrawn was a question for the jury. We are unable to concur with either contention. The question was a very broad one. It was whether any proposal or application had been made for which insurance had not been granted, and particulars were asked for, "and the names of all such companies, associations or *agents.*" Regarding the sense of the question—indeed, if not its letter—the answer was untruthful. The question certainly called for something more than an absolute negative. Its purpose was to ascertain the conduct of Salgue with reference to life insurance in order to judge of him as a risk. If it had been answered according to the facts, the company would have received information of circumstance certainly material for it to consider.

This conclusion is supported, as we have seen, by the cited Georgia cases and is not opposed by *Moulor* v. *American Life Insurance Company*, 111 U. S. 335 or *Phœnix Mutual Life Insurance Co.* v. *Raddin*, 120 U. S. 183. In the *Moulor Case* it was held that the statements made by an applicant would be considered as representations rather than warranties, the policy leaving it in doubt which they were contracted to be, and that they could not be considered either by the company or the applicant as covering diseases which the latter was not conscious of having. It was said that what the company desired of the applicant was the utmost good faith toward it, "and make full, direct, and honest answers to all questions, without evasion or fraud, and without suppression, misrepresentation

or concealment of facts with which the company ought to be made acquainted; and that by so doing, and only by so doing, would he be deemed to have made 'fair and true answers.'"

In *Phœnix Life Insurance Company* v. *Raddin*, there is a clear definition of principles. Answers to questions propounded to an applicant, it was held, will be considered representations unless clearly intended by both parties to be warranties, as to which substantial truth in everything material to the risk is all that is required of the applicant. And it was decided "whether there is other insurance on the same subject, and whether such insurance has been applied for and refused, are material facts, at least when statements regarding them are required by the insurers as part of the basis of the contract. . . . Where an answer of the applicant to a direct question of the insurers purports to be a complete answer to the question, any substantial misstatement or omission in the answer avoids a policy issued on the faith of the application."

The medical examiner, as we have seen, put down the answer "No" to the question asked Salgue as to whether he had heart disease, after being informed by Salgue, that he, Salgue, had been told by physicians that his heart was affected. It appears from the evidence that the other answers of Salgue in his application were written down by the agent of the company; and there is testimony for and against the fact that Salgue informed the agent of the opinion entertained of him by his physicians, and that he also informed the agent of other applications for insurance. It is hence contended that the agent, not Salgue, is responsible for the positive character of the answers and that the insurance company is estopped by this action of the agent and by his knowledge of the actual conditions and circumstances. It is, therefore, further contended that the case comes within the principle of the cases which

establish that where the agent of the company prepares the application or makes representations to the insured as to the character and effect of the statements of the application he will be regarded in so doing as the agent of the company, and not the agent of the insured. Among the cases cited to sustain the principle are the following in this court: *Union Mutual Insurance Co.* v. *Wilkinson,* 13 Wall. 222; *American Life Insurance Co.* v. *Mahone,* 21 Wall. 152; *New Jersey Mutual Life Insurance Co.* v. *Baker,* 94 U. S. 610; *Continental Life Insurance Co.* v. *Chamberlain,* 132 U. S. 304. *German-American Life Association* v. *Farley, supra,* is also cited, and, being a Georgia case, its authority is especially urged.

There are, however, later cases which enforce the provisions of a policy, and we have seen that it was agreed in the policy under review "that no statement or declaration made to any agent, examiner or other person, and not contained in" the application, should "be taken or construed as having been made to or brought to the notice or knowledge of" the company, "or as charging it with any liability by reason thereof." And he, Salgue, expressed his understanding to be that the company or one or more of its executive officers, and no other person, could grant insurance or make any agreement binding upon the company.

The competency of applicants for insurance to make such agreements, and that they are binding when made, is decided by *Northern Assurance Co.* v. *Grand View Building Association,* 183 U. S. 308; *Northern Assurance Co.* v. *Grand View Building Association,* 203 U. S. 106; *Penman* v. *St. Paul Fire & Marine Insurance Co.,* 216 U. S. 311.

To the contention that *German-American Life Association* v. *Farley,* is determinative, we answer that the principle which it is cited to support is one of general jurisprudence, and therefore the case is not controlling. *Kuhn* v. *Fairmont Coal Co.,* 215 U. S. 349.

This case was consolidated by the court, against the objection of the insurance company, with the trial of the case of the same plaintiff against the Prudential Insurance Company. This action of the court was based on § 921 of the Revised Statutes which provides that "causes of a like nature or relative to the same questions" may be consolidated "when it appears reasonable to do so." The action of the court is assigned as error. We doubt if it was reasonable to consolidate the cases. We need not, however, pass definitely on that point, as we direct a new trial on other grounds.

*Judgment reversed and cause remanded to the District Court for a new trial.*

MR. JUSTICE PITNEY dissents.