MUTUAL LIFE INS. CO. OF NEW YORK v. POWELL.

(Circuit Court of Appeals, Fifth Circuit. October 5, 1914.)

No. 2549.

INSURANCE (§ 378*)—LIFE INSURANCE—WAIVER AFFECTING RIGHT TO AVOID POLICY FOR FRAUD—COLLUSION OF AGENT.

The insured in a life policy, in her application, which was made a part of the contract, with a provision that in the absence of fraud the statements therein should be deemed representations, and not warranties, in answer to questions by the medical examiner, stated that she had been subject to no illness or disease since childhood and was in good health; that she had consulted no physician within five years, had undergone no surgical operation, nor been treated in a hospital. All of such statements were false, and known to be so by her and by the medical examiner; but such fact was not communicated or known to the company. She was in fact afflicted at the time with a mortal disease, for which she had undergone a surgical operation in a hospital, and which caused her death within ten months after issuance of the policy. Such facts were undisputed. *Held*, that the fact that the medical examiner was the agent of the company did not charge it with knowledge of the facts known to him and that the fraud avoided the policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 968–997; Dec. Dig. § 378.*]

In Error to the District Court of the United States for the Southern District of Georgia; Emory Speer, Judge.

Action at law by W. C. Powell, administrator of the estate of M. Emma Powell, deceased, against the Mutual Life Insurance Company of New York. Judgment for plaintiff, and defendant brings error. Reversed.

James H. Gilbert, of Atlanta, Ga., and William H. Fleming, of Augusta, Ga., for plaintiff in error.

James N. Talley, of Macon, Ga., and John T. West, of Thomson, Ga., for defendant in error.

Before PARDEE and SHELBY, Circuit Judges, and FOSTER, District Judge.

FOSTER, District Judge. This is an action on a policy of life insurance, brought by W. C. Powell, as administrator of the estate of his deceased wife, M. Emma Powell. The defendant admitted the issuance of the policy sued on and the receipt of the premium, return of which it tendered, but set up that the policy never took effect, as a contract binding upon the defendant, because at the time of the payment of the first premium and the issuance of the policy the applicant was not in good health, but was afflicted with a disease which caused her death within less than seven months thereafter, to wit, carcinoma or

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

cancer of the breast, of which fact defendant was ignorant at the time of the payment of the premium and the issuance of the policy, and continued ignorant until after the death of the applicant, relying upon statements of the applicant which were false. The policy was issued February 9, 1910, and the insured died on December 6, 1910, of cancer, shorty after an operation by which her entire left breast was removed.

At the close of the evidence defendant moved the court to direct a verdict in its favor, which was denied. This action of the court is one of the errors assigned.

The policy contains the following clauses:

"This policy and the application herefor, a copy of which is indorsed hereon, or attached hereto, constitute the entire contract between the parties hereto. All statements made by the insured shall, in the absence of fraud, be deemed representations, and not warranties, and no such statement of the insured shall avoid, or be used in defense to, a claim under this policy, unless contained in the written application herefor, copy of which is indorsed hereon, or attached hereto."

"Agents are not authorized to modify this policy or to extend the time for paying a premium."

The application, made part of the policy, contains the following clause:

"All the following statements and answers, and all those that I make to the company's medical examiner, in continuation of this application, are true, and are offered to the company as an inducement to issue the proposed policy, which shall not take effect unless and until the first premium shall have been paid during my continuance in good health, and unless also the policy shall have been issued during my continuance in good health."

The medical examiner's report, as set out in the policy, contains, among others, the following questions and answers (the answers are italicized):

"4. What illnesses, diseases, or accidents have you had since childhood? (The examiner should satisfy himself that the applicant gives full and careful answers to this question.)

"Name of disease, etc.: *None.* Number of attacks: *None.*

"5. Have you stated in answer to question 4 all such illnesses, diseases, or accidents? *Yes.*

"6. State every physician who has prescribed for you or whom you have consulted in the past five years.

"Name of physician: *None.* Address: *None.* When consulted. Give nature of complaint. Give full details above under Q. 4. (*No answer.*)

"7. (a) Are you now in good health? *Yes.* (b) If not, what is the impairment? (*No answer.*) * * *

"10. Have you undergone any surgical operation? *No.* * * *

"17. (a) Have you ever been under treatment at any asylum, cure, hospital, or sanitarium? *No.* (b) If so, when, how long, and for what cause? (*No answer.*)

As to her said answers the insured signed the following certificate:

"I certify that my answers to the foregoing questions are correctly recorded by the medical examiner.

"[Signature of the person examined.]          M. Emma Powell."

All the above answers were untrue. It is shown that in 1904 the insured consulted Dr. Groves, who was her family physician, and who also conducted the medical examination for the insurance company, about a sore on her left breast, and he sent her to Dr. Culbertson, a

specialist in such matters, who treated her; that in 1907 she again consulted Dr. Groves, who this time sent her to Dr. Oertel, also a specialist, and he in turn took her to a hospital, where she remained two days and underwent an operation by Dr. Crane, by which her left nipple and some surrounding tissue were excised. Defendant also offered evidence to the effect that the said answers were material, and, had they been answered truthfully, the policy would not have issued. There was also some showing that other answers regarding family history were materially false. All of the physicians testified in the case, except Dr. Groves, who was deceased. Dr. Culbertson testified that he diagnosed the sore on her breast as epithelioma, or skin cancer, and was under the impression that he had so informed her and her husband; and Dr. Crane testified that the disease for which he excised the nipple was Paget's disease, which he now considers always develops into cancer.

Had the case ended here, the defendant undoubtedly would have been entitled to a directed verdict, regardless of whether the statements to the medical examiner be considered as warranties, because of the apparent fraud, or merely as representations, since they were untrue and material to the risk.

But plaintiff seeks to avoid the effect of the false answers on the theory that the insured was in good faith and made true answers to the questions propounded, but that they were incorrectly recorded by the medical examiner; that the insured relied upon his advice in permitting the answers as written to stand; that the said doctor was the agent of the insurer, and had full knowledge of the facts, and the company is charged with his knowledge and bound by his acts.

To support this theory the plaintiff was sworn as a witness in his own behalf, and testified that he was present when his wife was examined by Dr. Groves prior to her visit to Dr. Culbertson, and he was also present when she was examined for the insurance policy. His testimony in part is as follows: -

"Q. Mr. Powell, when those questions were asked about the treatment, what treatment she had had, surgical operations and things of that kind, what answer did she make Dr. Groves? A. She says to Dr. Groves, 'You know my condition;' she says, 'You know I have been treated by you and Dr. Culbertson and Dr. Oertel; what should my answer be in a case like that?' The doctor says, 'You are done and well now; you have been well for four years; you haven't felt any effects of this place,' he says; 'I would answer in the negative; I would answer, "No"—that I was not in the hospital, and was not treated, according to the questions asked in the application.' Q. Who wrote those answers? A. Dr. Groves."

And he testified to similar conversations regarding the other questions, not necessary to set out more in detail.

Plaintiff cites the case of Fidelity Mutual Life Association v. Jeffords, 107 Fed. 402, 46 C. C. A. 377, 53 L. R. A. 193, decided by this court, and Continental Life Insurance Co. v. Chamberlain, 132 U. S. 304, 10 Sup. Ct. 87, 33 L. Ed. 341, as controlling authority, and various other cases along the same line. We do not think the two cases above cited are analogous to the one at bar.

In the Jeffords Case it was contended that, while the insured was afflicted with incipient consumption, he did not know it; that he men-

tioned several doctors who had treated him, but had merely forgotten to mention others; that under the Georgia Code, if in good faith, he could recover. The evidence was conflicting, and there was no motion to direct a verdict. The ruling of the court was only as to the charges given and refused. Here there is no conflict of evidence. The insured knew the facts, had not forgotten them, and actually discussed them at the time of answering the questions.

In the Chamberlain Case the false representation was as to other insurance. The insured was a member of certain co-operative societies, and informed the agent of that fact, and after considerable discussion it was decided to answer the question as to other insurance in the negative. There was no question as to the good faith of either the insured or the agent, and there was some latitude for difference of opinion.

The conduct of the insured in this case is incompatible with good faith. It may be that neither she nor her husband knew that she was afflicted with cancer, as all people are prone to deceive themselves with regard to lingering and fatal maladies; but even as to this there is considerable doubt. But it is unbelievable that she did not know that the trouble with her breast was serious, as otherwise her family physician would not have sent her to specialists. She could not help knowing that she had undergone a surgical operation, that she had been treated in a hospital, and that she had consulted physicians within five years before the application for the policy. As to her knowledge of these facts the testimony of her husband removes all doubt.

It would be fruitless to attempt to analyze and reconcile the many apparently conflicting decisions on this subject, though doubtless there are special facts in each case to distinguish it from the others, as in our opinion this case is controlled by the decisions in New York Life Insurance Co. v. Fletcher, 117 U. S. 519, 6 Sup. Ct. 837, 29 L. Ed. 934, Ætna Life Insurance Co. v. Moore, 231 U. S. 543, 34 Sup. Ct. 186, 58 L. Ed. 356, and Prudential Insurance Co. v. Moore, 231 U. S. 560, 34 Sup. Ct. 191, 58 L. Ed. 367. In this case it is apparent that a gross fraud was perpetrated on the insurer, which would have been impossible without the active participation of the insured. The medical examiner was not the agent of the company for the purpose of defrauding it. It had the right to rely on the statements of the insured that her answers were true and had been correctly recorded by the doctor, and it is not estopped to set up their falsity.

In the Fletcher Case, supra, the facts and contentions were practically the same as here, and the court, through Mr. Justice Field, quoting with approval the language of the Supreme Court of Connecticut, said:

"But it cannot be supposed that these defendants intended to clothe this agent with authority to perpetrate a fraud upon themselves. That he deliberately intended to defraud them is manifest. He well knew that, if correct answers were given, no policy would issue. Prompted by some motive, he sought to obtain a policy by means of false answers. His duty required him not only to write the answers truly as given by the applicant, but also to communicate to his principal any other fact material to the risk which might come to his knowledge from any other source. His conduct in this case was a gross violation of duty, in fraud of his principal, and in the interest of the other party. To hold the principal responsible for his acts, and assist in the

consummation of the fraud, would be monstrous injustice. * * * The fraud could not be perpetrated by the agent alone. The aid of the plaintiff or insured, either as an accomplice or as an instrument, was essential. If she was an accomplice, then she participated in the fraud, and the case falls within the principle of Lewis v. Phœnix Mutual Life Insurance Co., 39 Conn. 100. If she was an instrument, she was so because of her own negligence, and that is equally a bar to her right to recover."

In the two Moore Cases cited above the provisions of the Georgia Code were considered by the Supreme Court, and the decisions are clearly to the effect that where the statements in the application and answers to the medical examiner were false and material, if undisputed, the question of good faith was not one for the jury. It is true that the policies in the said two cases contained clauses to the effect that no statement or declaration made to any agent or examiner or other person not contained in the application could be taken or construed as having been made to or brought to the notice and knowledge of the company. While the language of the policy under consideration as contained in the clauses above quoted is somewhat different, its effect is the same. But this is immaterial, as on the undisputed facts the fraud was apparent.

In this case the defendant was entitled to a directed verdict. The overruling of the motion to that effect was error, and the judgment must be reversed. As the same questions are not likely to arise on the next trial of the case, it is unnecessary to consider the other assignments of error.

Reversed and remanded.