## MARYLAND CASUALTY CO. v. EDDY.

(Circuit Court of Appeals, Sixth Circuit. February 7, 1917.)

No. 2896.

1. INSURANCE ☞136(5)—APPLICATION—ANSWERS OF INSURED.

Though the signature of insured to the application is questioned, the authenticity of the answers therein. which were made part of the policy as issued, ·must be treated as admitted, since no rational theory of contract can be made that does not hold the assured to know the contents of the instrument to which he seeks to hold the other party.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 222–224, 229, 230; Dec. Dig. ☞136(5).]

2. INSURANCE ☞300—FORFEITURE—MISREPRESENTATION.

A misrepresentation by an applicant for accident insurance that no similar insurance had been canceled, or renewal thereof refused, when in fact such a policy had been canceled for the stated reason that insured was too reckless in driving automobiles, and the application was made to secure insurance in place of that canceled, is, as a matter of law, material and intentional, and prevents recovery on the policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 679; Dec. Dig. ☞300.]

3. COURTS ☞363—RULES OF DECISION—STATE STATUTE—INSURANCE AGENTS.

The United States courts will follow and apply a state statute determining the status of an insurance agent.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 939–949; Dec. Dig. ☞363.]

4. INSURANCE ☞73—AGENTS—STATUTES—ACCIDENT INSURANCE.

Comp. Laws Mich. 1897, § 7246, which is part of a chapter relating wholly to fire and marine insurance, and which declares to be agents all those who have anything to do with placing the risk, does not apply to accident insurance which is controlled by sections 5110–5115.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 99, 100; Dec. Dig. ☞73.]

5. INSURANCE ☞73—AGENTS—RESTRICTIONS ON AUTHORITY.

In the absence of statutory regulation, a stipulation in a policy that no person, unless duly authorized in writing, shall be deemed the agent of the company, is binding on those who take the policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 99, 100; Dec. Dig. ☞73.]

6. INSURANCE ☞376(2)—AGENTS—RESTRICTIONS ON AUTHORITY—IMPLIED PROVISIONS IN POLICY.

A provision in an accident insurance policy that an agent has no authority to change the policy or waive any of its provisions, and that notice to any agent or knowledge by him shall not be held to.affect a waiver of any part of the policy, applies to the provision, read into the

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

policy by law, that a material intentional misrepresentation avoids the policy, as well as to the provisions expressed therein, and the fact that the agent had knowledge of such misrepresentation, does not prevent forfeiture of the policy therefor.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 955; Dec. Dig. ☞376(2).]

In Error to the District Court of the United States for the Southern Division of the Western District of Michigan; Clarence W. Sessions, Judge.

Action by Leeta M. Eddy against the Maryland Casualty Company. Judgment for plaintiff, and defendant brings error. Reversed, and remanded for new trial.

George Hoadly, of Cincinnati, Ohio, for plaintiff in error.
A. J. Mills, of Kalamazoo, Mich., for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge. This suit was brought in the court below by Mrs. Eddy to recover the amount of a policy insuring her husband against death by external, violent, and accidental means. He was found dead in a hotel room, and, for the purposes of this opinion, it may be assumed that his death was caused by an overdose of chloral, taken by him to induce sleep, and without suicidal intent. The defenses were that the issue of the policy had been procured by false representations, and that the death was not of the class covered by the policy. Upon the trial, the court denied the defendant's motion to take the case from the jury, and the jury found in plaintiff's favor upon the issues submitted. The insurance company brings this writ of error.

The policy, dated September 2, 1913, began with these words:

"In consideration of the statements in the application for this policy, a copy of which is indorsed hereon and made a part hereof, and of $25 premium, the * * * company * * * hereby insures," etc.

The copy indorsed, as well as what purported to be the original application offered in evidence, commenced:

"Application is hereby made for a * * * policy to be issued upon the following statements, viz."

These statements were numbered upon the copy, and upon the application itself, from 1 to 15. The numbered paragraphs were, by the caption, denominated "statements," and, by a footnote upon the application, "warranties."

[1] Upon the trial, some question was suggested whether Mr. Eddy's signature to the application was sufficiently proved; but the statements now involved were part of the policy as issued, and the case has been argued in this court as though the authenticity of his answers must be admitted. We treat the case upon the same theory. "No rational theory of contract can be made that does not hold the assured to know the contents of the instrument to which he seeks to hold the other party." Lumber Underwriters v. Rife, 237 U. S. 605, 609, 35 Sup. Ct. 717, 718 (59 L. Ed. 1140).

The policy contained no express provision as to the effect upon the company's liability in case any statement in the application was false, nor did the policy itself declare that these statements were warranties. In this situation it was held by the district court that the mere falsity of a statement—even a material statement—would not vitiate the policy, unless it further appeared that the statement was deliberate and purposeful, and that Mr. Eddy intended to deceive the company about a material matter in order to get it to issue the policy. This rule of law is challenged by the company, but we pass the question.[1]

[2] The claimed misstatements were three:

(1) No. 14 was, "My habits of life are correct and temperate." The evidence tended to show that the applicant had gone on periodical drinking sprees; that he had taken the so-called "gold cure" with only temporary good results; that at a time not fixed by the record, but seemingly not long before the application, he had taken another kind of medical treatment for the cure of the liquor habit; and that he died in a relapse of the habit.

(2) A part of statement No. 9 was:

"No application ever made by me for accident * * * insurance has been declined or notice of action withheld."

In fact, two years before this application, his application for a $25,000 accident policy in the Travelers' Insurance Company had been declined.

(3) Another part of statement No. 9 was:

"Nor has any such [accident] policy of insurance been canceled or renewal been refused."

In fact, a $5,000 accident policy in the Travelers' had been canceled within the previous four months, upon the stated ground that Mr. Eddy was an undesirable accident risk, because too reckless in driving automobiles.

As to the statement regarding his temperate habits of life, the excuse is that he believed he was completely cured, and that he therefore did not intend to deceive. As to the statement that no application had been declined, the explanation is that this declined policy was of a special class, issued only to preferred risks, and hence Mr. Eddy was justified in supposing that the refusal to issue such a policy was not a material matter. Upon both of these subjects we may assume that there was an issue for the jury; but as to the third statement, above recited, we find in the record no suggestion of explanation or excuse. Mr. Eddy had been notified of this cancellation; he talked it over with the local agent of the Travelers'; this same local agent was a soliciting broker for the Maryland Company; and the application for the policy in suit was made with the purpose by both of getting insurance to replace that which had been canceled. Under this situa-

---

[1] The Michigan statute, upon the books when this policy issued (section 6, Act 264, of 1913), states a rule which seems to be consistent with Phœnix Co. v. Raddin, 120 U. S. 183, 189, 7 Sup. Ct. 500, 30 L. Ed. 644, and by which a materially false statement, even without intent to deceive, would avoid the policy; but this statute was postponed in its taking effect to January 1, 1914.

tion, there is no room to deny that the misrepresentation was not only most deliberate and intentional, but that they both knew it to be material. Such a situation presents no question of fact for the jury; the materiality of such a statement is apparent as matter of law. Phœnix Co. v. Raddin, 120 U. S. 183, 189, 7 Sup. Ct. 500, 30 L. Ed. 644. It is clear to us that no reasonable man could think that the deceit practiced upon the company was unintentional or in any way excusable; and we are satisfied that, on these facts, plaintiff cannot recover. Ætna Co. v. Moore, 231 U. S. 543, 34 Sup. Ct. 186, 58 L. Ed. 356; Mutual Co. v. Hilton, 241 U. S. 613, 622, 36 Sup. Ct. 676, 60 L. Ed. 1202; Mutual Co. v. Powell (C. C. A. 5) 217 Fed. 565, 568, 133 C. C. A. 417.

However, before accepting this conclusion as controlling upon the present record, we must observe what effect, if any, is to be given to the relation between the parties and Rankin, the so-called agent, who took the application. Rankin himself, a witness for plaintiff, says that, while he was agent for the Travelers', he was "just a broker" for the Maryland; and there is nothing expressly to the contrary.

[3, 4] It should be noted that no Michigan statute is found affecting Rankin's status. The Supreme Court of the United States will follow and apply such a statute (Continental Co. v. Chamberlain, 132 U. S. 304, 10 Sup. Ct. 87, 33 L. Ed. 341; McMaster v. New York Co., 183 U. S. 25, 22 Sup. Ct. 10, 46 L. Ed. 64); although such statute does not raise special agents with limited authority into general ones possessing unlimited power (Mutual Co. v. Hilton, supra, 241 U. S. at page 623, 36 Sup. Ct. 676, 60 L. Ed. 1202); but the rule familiar in Michigan, and declared by the Supreme Court of that state in Pollock v. German Co., 127 Mich. 460, 461, 86 N. W. 1017, is merely an adoption of the express words of section 7246 of the Michigan Compiled Laws of 1897. This section is part of chapter 194, which relates wholly to fire and marine insurance, and has no application to accident insurance. The latter subject is controlled by Act No. 237 of 1881, being sections 5110–5115 of the Compiled Laws of 1897, and these sections contain nothing corresponding to that provision of section 7246 which declares to be agents of the insurance company all those who have anything to do with placing the risk.

[5] Further, the policy in suit, by agreement No. 13, provides:

"In any matter relating to this insurance, no person, unless duly authorized in writing, shall be deemed the agent of this company."

In the absence of statutory regulation, such an agreement is binding upon those who take a policy containing it. Ætna Co. v. Moore, supra. There is, in this record, no effective evidence of any authority in writing from the Maryland Company to Rankin; but, as there are some vague allusions to such authority, it may exist, and we prefer not to dispose of the case on this ground. We therefore assume that in some substantial sense Rankin may have been the agent of the company.

It is to be noted, also, that we have not here a case where the applicant stated the truth to the agent, and the agent either changed the answer without applicant's knowledge, or gave applicant advice as to

how questions should be interpreted, in which instances it has been thought right that an agent with ordinary powers should be considered to be acting for the company. Union Co. v. Wilkinson, 13 Wall. 222, 20 L. Ed. 617; New Jersey Co. v. Baker, 94 U. S. 610, 24 L. Ed. 268. As to the above-recited statements, 1 and 2, there is room to suppose that Rankin gave such advice or prepared the answers in accordance with his interpretation; not so as to misstatement No. 3.

[6] We have already recited parts of the policy and application, from which it appears that the policy was issued in consideration of the statements of the application, and that the statements of the application were made as the basis of getting the policy. It thereupon became, as matter of law, a vital condition of the contract that the making of a statement which was material and false, and known by the applicant to have both of these characteristics, would be a defense to any action on the policy. Mutual Co. v. Hilton, supra. It was quite unnecessary to say this in so many words; "the modest intelligence of the prudent man" (Underwriters v. Rife, supra, 237 U. S. 619, 35 Sup. Ct. 717, 59 L. Ed. 1140) would be sufficient to inform the policy holder both that the condition existed and that it was vital. Agreement No. 13 of the policy says:

"An agent has no authority to change this policy, or to waive any of its provisions, nor shall notice to any agent or knowledge of his or any other person be held to effect a waiver or change in this contract or any part of it. No change whatever in this policy and no waiver of its provisions shall be valid unless an indorsement is entered hereon, signed by the president, vice president, or secretary of the company, expressing such change or waiver."

That this provision is valid and binding on the insured is clearly held in Ætna Co. v. Moore, supra; and the substance of plaintiff's position must be that the provision attached by law to the words of the contract, by which provision a knowingly false and material statement avoids the contract, was "changed" or "waived" because the agent had knowledge of the falsity. If this provision had been expressed in words, it would be entirely clear that there could be no change or waiver by the agent even by his most express consent, and we see no satisfactory distinction between that case and one where the condition or provision said to be waived is read into the contract by the law, with which both parties must be deemed familiar.

If it be said that Ætna v. Moore is to be distinguished because the agreement there involved was that notice to the agent should not be notice to the company, we find, perhaps, even closer analogy in the companion case of the Prudential Company v. Moore, 231 U. S. 560, 34 Sup. Ct. 191, 58 L. Ed. 367. In the latter case, it had been agreed that:

"No agent has power  *  *  *  to modify this  *  *  *  contract,  *  *  * to  *  *  *  waive any forfeiture or to bind the company by making any promise, or making or receiving any presentation or information."

The court said (231 U. S. 567, 34 Sup. Ct. 194, 58 L. Ed. 367):

"It is contended here, as in the Ætna Case, that the company is estopped by the knowledge of the agent, and the same cases are cited as were cited

there. We answer here, as we answered there, that the terms of the policy constituted the contract of the parties and precluded a variation of them by the agent."

In this disposition of the matter, the conclusion seems necessarily involved, although not spelled out, that to say that the company is estopped to rely upon such a false answer because its agent had knowledge, is to say that the terms of the contract are to be changed. Upon the subject of knowledge by the agent under similar circumstances, see, also, Mutual Co. v. Hilton, supra, 241 U. S. at page 623, 36 Sup. Ct. 676, 60 L. Ed. 1202 and Mutual Co. v. Powell, supra, 217 Fed. at page 568, 133 C. C. A. 417.

We imply no opinion as to whether the evidence sufficiently tended to show death by "external, violent, and accidental means," as distinguished from an intentional taking of an amount of chloral which proved to be too much, but which otherwise involved no element of accident.

The judgment must be reversed, with costs, and the case remanded for new trial, if it is thought that other evidence may give the case a different aspect.