## ÆTNA LIFE INS. CO. v. ROEWE.
### No. 4244.

Circuit Court of Appeals, Seventh Circuit.
March 3, 1930.

Rehearing Denied March 26, 1930.

Frank H. Sullivan, of St. Louis, Mo., for appellant.

Rudolph J. Kramer, of East St. Louis, Ill., for appellee.

Before EVANS, PAGE and SPARKS, Circuit Judges.

PAGE, Circuit Judge.

This appeal is from a judgment in favor of appellee, Roewe, beneficiary under a policy on the life of Moore, who died about five weeks after the policy was delivered to him, without payment of the first premium thereon.

Appellee's contentions are: (a) That under the Illinois statute, Orr, the soliciting agent, had the power to, and did, waive the payment of the first premium; (b) that, under the contract of insurance, drafts were to be drawn by appellant's general agent for premiums, and, as no drafts were drawn, appellant, and not Moore, was in default.

The facts are substantially uncontradicted.

Moore and Roewe, as partners, were professional accountants, at East St. Louis, Ill., and made separate applications for insurance, in which each named the other as beneficiary. The Moore policy, together with the receipt for the first premium, was, according to the custom of appellant, sent to Orr. Because further examination was required of Roewe, his policy was delayed. Orr says that, because of the request in the application that draft be drawn for the premiums, he assumed that he was not to collect any premiums, and therefore delivered the policy to Moore without requiring payment of the first premium. However, he told Moore then, and again a few days before Moore's death, that the premium should be paid to put the policy in force.

The only contradiction in the evidence is in this: Orr testified that shortly after Moore's death appellee told him that the reason why the Moore premium had not been paid was that he (Roewe) intended waiting until the Roewe policy was also delivered; Roewe admits a conversation with Orr at that time, but denies using the language as

related by Orr. However, Roewe, after testifying that he had made no arrangement with the bank about paying drafts to be drawn for premiums, further testified:

"I hadn't made the definite arrangements with the bank on account of waiting until my policy would also come through, so I would know the amount we should charge every three months against the joint account."

That is very close to what Orr said Roewe had told him, and seems to show the reason why the Moore premium was not paid.

The Illinois statute relied upon provides (paragraph 346, c. 73, Cahill's Illinois Rev. Stats.):

*"Who Agent of Foreign Company.* § 23. Whoever solicits insurance on behalf of any life company not chartered by and not established within this State, or transmits, for any person other than himself, an application for life insurance, or a policy of life insurance, to or from such company, or advertises that he will receive or transmit the same, shall be held to be an agent of such company to all intents and purposes, and subject to all the duties, requisitions, liabilities and penalties set forth in the laws of this State relating to life insurance companies not incorporated by the Legislature thereof."

That statute simply means that a foreign corporation, which accepts applications from any solicitor, must also accept him as its agent. Nothing is said in the statute as to whether such agency is a special or a general one, or what powers such an agent has. Those are matters to be determined from the facts in each case under the general law relating to agency.

It is not denied that Orr was the agent of the company, but it is denied that it was within his power to waive any conditions of the policy. The case of Hancock Life Ins. Co. v. Schlink, 175 Ill. 284, 51 N. E. 795, 796, relied upon by appellee, is very different, upon the facts from this case, and the holding of the court there was:

"If Ballance was the agent of appellant, as we think he was, with power to solicit insurance of Schlink, receive the application, forward it to appellant, receive the policy when issued, collect the premium, and deliver the policy, then he had power to waive a condition of the policy."

That is an opinion of the court upon the general law of agency, and is not the construction of any statute. It is not binding upon this court, and is not in harmony with the law in the federal courts. Ætna Ins. Co. v. Moore, 231 U. S. 543, 34 S. Ct. 186, 58 L. Ed. 356; MacKelvie v. Mutual Benefit Co., 287 F. (2nd C. C. A.) 660, 663.

Upon its face, the Moore policy provided:

"This policy is issued and accepted subject to all of the conditions, benefits and privileges described on the following pages, which are hereby made a part of this contract."

A rider attached to the policy reads:

"This policy and the application herefor, a copy of which application is attached hereto and made a part hereof, constitute the entire contract between the parties hereto."

On the back of the policy is the following:

"This policy shall not become effective until the first premium upon it is paid during the good health of the insured."

Another provision is:

"All agreements made by the Company are signed by its President, Vice President, Secretary, Assistant Secretary, Treasurer, or Assistant Treasurer. No other person can alter or waive any of the conditions of this policy, extend the time for paying a premium or make any agreement which shall be binding upon the Company."

The application contains the following question and answer:

"Where are premium notices to be sent?"

"Southern Ill. National Bank, E. St. Louis, Ill."

Question 7 of the application, as it appeared as a part of the policy of insurance when delivered to Moore, is as follows (The part in italics was in writing, and all other parts were printed; "See H. O. End" refers to what appears under "Home Office Endorsements Only"):

"7. Has any payment of premium been made and binding receipt given on form 257-D detached herefrom. *See H. O. End.*

"What settlement has been made? *Draft to be drawn by General Agent.* If given the terms of the binding receipt are hereby agreed to. If not given, it is agreed, that no insurance hereon shall be effective until a policy is issued, and the entire first premium has been paid during the good health of the proposed insured and within sixty days from date of medical examination.

"Home Office Endorsements Only.

*"Ques. 7 should be answered 'No.'*

"Enter Here any Special Features Pertaining to Application.

*"The applicant requests that the Peoria General Agency draw a draft on the account of the Moore Roewe Audit Co. for a Quarterly premium as they come due. They bank at the Southern Illinois National Bank of E. St. Louis, Ill.*

"The above statement and answers and those in part 2 of this application are and shall be complete and true and it is hereby agreed that acceptance of any policy issued on this application shall constitute a ratification of the manner in which the policy is written in respect to the beneficiary and of any corrections, additions or changes, made by the Company and entered in the space provided for 'Home Office Endorsements Only.'

"Dated at *E. St. Louis, Ill.* this *15th* day of *Feb. 1928.*

"(If premiums are to be paid from the funds of a corporation or person other than the proposed insured, such a corporation or person should sign below). *The premiums are to be paid from the funds of the undersigned.*

"Moore-Roewe Audit Co.
"H. D. Moore          No. 318159.
"Harold Douglas Moore Proposed Insured.
"Must sign full name
                    "R. E. Orr   Witness."

The foregoing told Moore plainly that he took the policy subject to all of its terms and conditions. One of its terms was that his application was to be a part of the policy. Another was that only specified officers, and Orr was not one of them, could extend the time for paying a premium. Moore was twice told, once by the language upon the back of the policy, and again under question 7, immediately following the statement "Draft to be drawn by General Agent," that no insurance should become effective until the entire first premium had been paid. In the MacKelvie Case, above cited, the court said that, where such provisions are contained in a contract of insur-ance, they are to be taken as meaning exactly what they say; that is, that an agent, such as Orr, had no authority to waive them. Several Supreme Court cases and many cases in the Circuit Courts of Appeals are there cited in support of that holding.

We do not find from the facts that Orr had either the power or the intent to waive payment of the first premium. What Orr told Moore, as above related, shows a contrary intention.

■ There remains to be considered the effect of the provision in the policy of appellant's assent to the request in the application that a draft be drawn by the general agent. There is no inconsistency between that provision and the provision that the policy should not become effective until the first premium was paid. If Moore had intended that the payment of the first premium was to be waived or delayed until a draft was drawn therefor, it is not conceivable that a man of his experience and intelligence would have left in the application the words immediately following his request that a draft be drawn for the premiums by the general agent, viz.:

"If given the terms of the binding receipt are hereby agreed to. If not given, it is agreed that no insurance hereon shall be effective until a policy is issued, and the entire first premium has been paid," etc.

Had Moore or Roewe (Roewe being charged by Moore with making the financial arrangements at the bank) desired to do so, either could have paid the premium, without waiting for a draft to be drawn.

■ It does not appear that any one representing appellant, other than Orr, knew of the delivery of the policy without the payment of the first premium. Moore knew that he must pay the first premium to put the policy into effect, and he was not misled or prejudiced because of the delivery to him of the policy without payment of the premium.

The District Court should have instructed the jury to find the issues for the defendant.

The judgment is reversed.