MANUFACTURERS LIFE INSURANCE COMPANY, Plaintiff and Appellant, v. LORENZO IRIZARRY, JUANA ROSENDA QUIÑONES DE IRIZARRY, BUENAVENTURA DOMENECH GONZÁLEZ and LUIS MALDONADO SANTIAGO, Defendants and Appellees.

No. 3465. Argued March 6, 1925.—Decided May 25, 1925.

1. INSURANCE—LIFE INSURANCE—HEALTH OF APPLICANT—FALSE STATEMENTS—ESTOPPEL—SOLICITING AGENT—CERTIFICATE OF PHYSICIAN. — An insurance company is not estopped from pleading false statements concerning the health of an insured who in applying for the policy declared falsely that he was in perfect health, notwithstanding the fact that the idea of insuring was induced by the soliciting agent of the company and that the company's physician certified to the good health of the applicant.

2. ID.—ID.—ANNULMENT OF POLICY—FRAUD—LACHES. — An insurance company which on November 30th sues for the annulment of a policy applied for on April 19th and issued in May of the same year is not guilty of laches, especially when the general situation is abnormal and the policy provides that "this policy shall be incontestable after it has been in force for two full years (except in case of fraud)   *   *   * ."

3. ID.—ID.—ID.—ID.—THIRD PERSONS.—If a life insurance policy is issued in the belief that the false statement of a material fact is true, on proof of the falsity of the statement the contract becomes absolutely void, whether or not third persons are thereby affected.

District Court of Ponce, R. Díaz Cintrón, J. Judgment for the
    defendants in an action to annul an insurance policy. *Reversed.*
*Daniel F. Kelley* and *Alberto S. Poventud* for the appellant. *José
    Rosario Gelpí* and *Sergio G. Gelpí* for the appellees.

Mr. Chief Justice Del Toro delivered the opinion of the
    court.

The plaintiff, an insurance company of Toronto, Canada,
brought this action to annul a policy issued in favor of
defendant Irizarry for the reason that Irizarry declared
that he was in perfect health when he applied for the in-
surance, the fact being that he was then sick. The defend-
ants alleged in their answer that the declarations made in
the application were true, setting up various special de-
fenses. After trial the court rendered judgment for the
defendants and thereupon the plaintiff took the present ap-
peal. We shall consider first the "defenses" of the de-
fendants.

[1] The first is that the plaintiff company is estopped
from questioning the condition of the health of defendant
Irizarry for the reason that his health was certified to as
good by physicians freely chosen by the said company after
the application had been made at the solicitation and re-
quest of the company acting by its agent.

We have examined the cases cited by the appellees in
support of their contention and they are not exactly ap-
plicable. In our opinion the light by which we should be
guided stands out clearly in the case of *Mutual Life Insur-
ance Company* v. *Hilton-Green*, 241 U. S. 613, 60 L. ed.
1202, cited by the appellant.

After stating the facts concisely the Supreme Court of
the United States, by Mr. Justice McReynolds, expressed
itself as follows:

"Considered in most favorable light possible, the above quoted
incorrect statements in the application are material representations;
and, nothing else appearing, if known to be untrue by assured

when made, invalidate the policy without further proof of actual conscious design to defraud. *Moulor* v. *Am. Life Ins. Co.,* 111 U. S. 335, 345; *Phoenix Life Ins. Co.* v. *Raddin,* 120 U. S. 183, 189; *Aetna Life Ins. Co.* v. *Moore,* 231 U.S. 543, 556–557; May on Insurance, 4th ed., sec. 181.

"The general rule which imputes an agent's knowledge to the principal is well established. The underlying reason for it is that an innocent third party may properly presume the agent will perform his duty and report all facts which affect the principal's interest. But this general rule does not apply when the third party knows there is no foundation for the ordinary presumption—when he is acquainted with circumstances plainly indicating that the agent will not advise his principal. The rule is intended to protect those who exercise good faith and not as a shield for unfair dealing. *The Distilled Spirits,* 11 Wall. 356, 367; *American Surety Co.* v. *Pauly,* 170 U. S. 133, 156; *American Natl. Bank* v. *Miller,* 229 U. S. 517, 521, 522; Mechem on Agency, 2d ed., sec. 1815.

"Section 2765 of the Florida statutes, *ante,* undertakes to designate as agents certain persons who in fact act for an insurance company in some particular; but it does not fix the scope of their authority as between the company and third persons and certainly does not raise special agents with limited authority into general ones possessing unlimited power. We assume Hogue, Torrey and the medical examiners were in fact designated agents of the company with power to bind it within their apparent authority; and in such circumstances the statute does not affect their true relationship to the parties. See *Continental Ins. Co.* v. *Chamberlain,* 132 U. S. 304, 310; *New York Life Ins. Co.* v. *Russell,* 77 Fed. Rep. 94, 103; *Wood* v. *Firemen's Insurance Co.,* 126 Massachusetts, 316, 319; *John R. Davis Lumber Co.* v. *Hartford Fire Ins. Co.,* 95 Wisconsin, 226, 234–235.

"The assured at the least consciously permitted an application containing material misrepresentations to be presented by subordinate agents to officers of the insurance company under circumstances which he knew negatived any probability that the actual facts would be revealed; and later he accepted policies which he must have understood were issued in reliance upon statements both false and material. He could claim nothing because of such information in the keeping of unfaithful subordinates. Moreover, the false representations accompanied and were essential parts of the policies

finally accepted. He did not repudiate, and therefore adopted and approved, the representations upon which they were based. Beyond doubt an applicant for insurance should exercise toward the company the same good faith which may be rightly demanded of it. The relationship demands fair dealing by both parties. *New York Life Ins. Co.* v. *Fletcher,* 117 U. S. 519, 529, 533, 534; *Assurance Co.* v. *Building Association,* 183 U. S. 308, 361; *U. S. Life Ins. Co.* v. *Smith,* 92 Fed. Rep. 503.

''Considered with proper understanding of the law, there is no evidence to support a verdict against petitioner and the trial court should have directed one in its favor.

''Judgment of the Circuit Court of Appeals is reversed and the cause remanded to the United States District Court, Northern District of Florida, for further proceedings in accordance with this opinion.''

In this particular case under consideration it was alleged in the complaint and proved at the trial that in his application, which forms a part of the policy, defendant Irizarry said: ''I hereby declare and convenant that at present and generally I am enjoying perfect health.'' If the defendant knew that this was not true it is of no importance that the idea of insuring did not originate with him, but was suggested by a soliciting agent of the company, or that the company's physician certified to his good health. Whether the defendant conspired with the agent and the physician of the company for the express purpose of defrauding the company, or acted on his own initiative, he necessarily knew that he was leading the head office of the company into error, because his good health was a requisite *sine qua non* for the issuance of the policy, and from the attitude of the agent in soliciting the insurance and of the physician in certifying favorably, considering his manifest condition of ill health that could deceive nobody, he necessarily had to infer that nothing contrary to his false statement of good health would be communicated to the officials of the company.

[2] The second defense pleaded is laches. It is contended that between the day on which defendant Irizarry made his application and the day on which the policy was issued the plaintiff had time to investigate the condition of the applicant's health and in not doing so voluntarily waived its right.

The evidence indicates an abnormal situation in the district in which the policy in question was taken. In investigating other cases the company became aware of the facts of this case. Forthwith it made an investigation of the case and offered to refund the only premium paid. The defendants refused to accept and the action was brought. The application was signed on April 19, 1923, and the policy was issued on May 4, 1923. The action was brought on November 30th of the same year. There is a clause in the policy reading as follows: "This policy shall be incontestable after it has been in force for two full years (except in case of fraud) * * *." These circumstances do not show waiver. Insurance companies do business over extensive territory. They generally accept as true the reports of their agents, spread at times over various nations, and as a general rule also are bound by them; but when they discover the falsity of the basis of the contract within the time specified therein they have a right to rescind it.

[3] The last special defense is pleaded by defendants Domenech and Maldonado, invoking their condition of third persons because they had no participation in the application.

We are unable to perceive that such a condition can exist in a case of this kind. If the policy was issued in the belief that the false statement of a material fact was true, on proof of the falsity of the statement the contract becomes absolutely void regardless of the consequences.

Having clarified the situation with regard to the special defenses, we will examine the evidence. In the opinion

written by the district judge in support of the judgment he said:

"But as we have said, the essential and culminating point is the fact that the defendant knew that he was sick; that he knowingly concealed that fact for the purpose of taking advantage of the plaintiff's ignorance; that if the insurance company had known that fact it would not have entered into the life insurance contract or issued the policy to which the action refers; but this fact has not been proved, as may be seen from our analysis of the plaintiff's oral and documentary evidence, for which reason the court is of the opinion that the said allegation of the complaint has not been established and dismisses the complaint without costs."

Let us see whether the opinion of the judge was justified.

José B. Gotay, a physician, testified that he had known Irizarry for five or six years. He said that about the time the application was made he met Irizarry and observed that he was thin, pale, coughed frequently and expectorated abnormally; that he did not examine Irizarry clinically and could not say what was his illness, but was positive that "he had some pulmonary ailment;" that Irizarry appeared to be sick; that his shoulders inclined inward and his ears were pale; that later the witness saw him again; that a few days before the trial the witness found him at his house in a hammock and he said that he was ill and could not go out; that in his opinion he had tuberculosis at the time of the trial, May, 1924.

Ramón Pérez Brun testified that he had known Irizarry for twenty-five years; that he met him in 1922 near his house; that he went there in connection with the sale of some peas and they engaged in conversation; that he told Irizarry that he was very ill and ought to go to a hospital; that Irizarry replied that he could not go to a hospital then; that he found him with a handkerchief tied around his head and in very bad health; that every time the witness saw him afterward he looked worse.

Antonio Purcel, a friend and relative of Irizarry, testified that he had always been unhealthy; that he saw him often and asked about his health, to which he replied that he was always sick and was going to Ponce to get some medicine.

Manuel Vélez Gotay testified that in April of 1923 Irizarry was weak, thin and pale.

The other witness for the plaintiff, Bernardino Pérez, was called to testify about the health of Irizarry and said that he was thin and pale, but that he could not tell whether Irizarry suffered from any illness.

The deposition of Irizarry is long and difficult to summarize. It is of great importance, not only to show the condition of his health, but also his financial condition and the reasons he had for taking out the policy.

The evidence for the defendants tends to show that Irizarry had always been thin and pale, but healthy and strong. It admits the poor condition of his health at the time of the trial, but attempts to explain it as due to a fall which he had after making the application for insurance.

The impression produced by the evidence on this court is different from that of the trial judge. In our opinion it is certain that the bad condition of defendant Irizarry's health when he signed the application and paid the insurance premium was evident and known by him. No deceit is possible.

And that conviction is strengthened by the other facts shown from the evidence. Irizarry was a poor countryman who lived in a hut on a small farm devoted to the cultivation of minor crops. He had to purchase elsewhere the milk that he needed. Adopting the most favorable aspect, the highest wages that he received from the Gelpí brothers was $15 a week. It produces great surprise to connect a person in Irizarry's situation with an insurance policy for

$18,000, the annual premium on which is almost $800. The explanation given by Irizarry concerning his meeting with Tellechea, the agent of the company, whom he asked about purchasing a small property to secure a living for his children, from which he desisted because of the suggestion of the agent that he take out an insurance policy for $18,000, instead of favoring the case of the defendants strengthens that of the plaintiff.

The logical explanation of this whole transaction is found when defendants Maldonado and Domenech appear on the scene. Irizarry directed that $500 of the $18,000 be paid to his wife; $12,000 to Domenech and $5,500 to Maldonado. His explanation of this does not bear analysis, especially after considering the testimony of Maldonado and Domenech in connection with that of Doctor Font y Guillot, the manager of the plaintiff company in Porto Rico, and of William E. Young, the manager of the foreign department of the said company, who came to Porto Rico because of the abnormal conditions to which we have referred heretofore.

As appears from the language of the trial judge, this is not a case of contradictory evidence adjusted by the trial court, but one wherein the trial judge held that even giving credit to the plaintiff's evidence, it was insufficient; but we desire to say not only that we consider the evidence sufficient, but also that even if the conflict had been adjusted by the trial judge, we would conclude that the judgment should be reversed because of manifest error in weighing the evidence. The evidence shows deceit so clearly and manifestly that it is not possible for a court of justice to uphold a contract entered into under these circumstances.

The judgment must be reversed and substituted by another sustaining the complaint with costs against the defendants.