## Leafgreen *v.* Labar et al., Exrs., Appellants.

*Equity—Equity practice—Amendment—Parties—Death of party —Abuse of discretion of court—Vendor and vendee—Act of May 4, 1864, P. L. 775.*

1. Section 2 of the Act of May 4, 1864, P. L. 775, expressly gives the right to amend pleadings in equity, and the death of one of the parties is not sufficient reason for refusing that right to the other.

2. The rules regarding amendments are the same in equity as at law.

3. A plaintiff may amend his bill if he so stated his cause of action originally as to show he had a legal right to recover what he subsequently claims.

4. A very clear abuse of discretion would have to be shown to justify an appellate court in reversing a decree, because the chancellor had allowed an amendment and granted a continuance.

*Vendor and vendee—Tender—Acquisition of money by vendor after date of contract—Right of vendee in such fund—Condition —Waiver.*

5. A purchaser of real estate in making a tender required by his contract, has a right to insist that the vendor shall apply, on account of the tender, a sum of money in his hands, but belonging to the purchaser, if it became due in the course of a transaction begun after the contract of purchase, and if also the result of holding otherwise would be a forfeiture of the vendee's property for the benefit of the vendor.

6. Even though a tender must be made in strict compliance with the contract of purchase, it is not invalidated because of a condition which the tenderer imposes, if he had a right to insist upon that condition, and the vendor could not reasonably object to it.

7. Where a vendor does not object to the amount and character of a tender, at the time it is made, he will not afterward be permitted to do so if it is then too late to make a better tender.

*Equity—Specific performance—Vendor and vendee—Laches.*

8. A bill for specific performance will not be dismissed on the ground of laches, if it is promptly filed after the time when the vendor can actually comply with the agreement of sale.

Argued March 10, 1924. Appeal, No. 303, Jan. T., 1924, by defendants, from decree of C. P. Monroe Co.,

May T., 1920, No. 32, for plaintiff on bill in equity, in case of Hans A. Leafgreen v. William K. Labar and Lewis Meyers, Executors of Harry B. Drake, deceased. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Bill for specific performance. Before SHULL, P. J. The opinion of the Supreme Court states the facts. Decree for plaintiff. Defendants appealed.

*Errors assigned* were, inter alia, (1) allowance of amendment, and (6) decree, quoting record.

*E. J. Fox* and *F. B. Holmes,* for appellants.—The burden of proof was on plaintiff to show that at the date of suit there was a valid subsisting contract between himself and defendant under which he had the right to a decree of specific performance: Neill v. Hitchman, 201 Pa. 207; Ewing's App., 18 W. N. C. 29.

The tender, if made as alleged, was inadequate and insufficient: Roberts v. Beatty, 2 P. & W. 63; Wagenblast v. McKean, 2 Grant 393; Forrest Oil Co.'s App., 118 Pa. 138; Schaeffer v. Coldren, 237 Pa. 77; Stevenson v. Burgin, 49 Pa. 36; Gawthrop v. Fibre Co., 257 Pa. 353; Hoffman v. Adair, 67 Pa. Superior Ct. 164; Pershing v. Feinberg, 203 Pa. 144; McKibbin v. Peters, 185 Pa. 518; Wilson v. Buchanan, 170 Pa. 14; Dubois v. Baum, 46 Pa. 537; Dwyer v. Wright, 162 Pa. 405; McGrew v. Foster, 113 Pa. 642.

The motion to amend at trial should have been denied because it was contrary to the equity rules and repugnant to the original bill: Toomey v. Hughes, 19 Phila. 506; Frick v. Magee, 10 W. N. C. 50; Dever v. Kathrins, 82 Pa. 140.

*W. B. Eilenberger,* with him *Harvey Huffman* and *C. C. Shull,* for appellee.: Appellants have cited many cases to show that a tender must be unconditional. There is

no dispute as to this, as a general proposition of law, but, as has been pointed out by the Supreme Court, it is more accurate to say that a tender to be good must not be accompanied by any condition to which the creditor has a right to object: Schaeffer v. Herman, 237 Pa. 86; Nickols v. Jones, 166 Pa. 599.

Under the testimony of Harvey Huffman, Esq., and Albert E. Lake, Esq., Harry B. Drake refused the tender and having refused it, it is immaterial as to what the details of the tender were: Tiernan v. Roland, 15 Pa. 429; Fitzpatrick v. Engard, 175 Pa. 393.

The amendment was properly allowed: Wilhelm's App., 79 Pa. 120; Nevin v. Catnach, 264 Pa. 523; Erie City Iron Works v. Barber, 118 Pa. 6; Rose v. Rose, 1 Phila. 365.

OPINION BY MR. JUSTICE SIMPSON, April 14, 1924:

Defendants appeal from a decree requiring them, as executors of the will of Harry B. Drake, deceased, to perform specifically his contract for the sale of certain real estate, they having been substituted as defendants after his death. The relevant facts are as follows:

On May 13, 1918, plaintiff and Mr. Drake (hereafter called decedent) entered into a written agreement, which recited that plaintiff had caused to be conveyed to decedent, the real and personal property at Castle Inn, at the Delaware Water Gap, the former being subject to two mortgages of $55,000 each, the first of which was then being foreclosed; that decedent was interested in the bonds secured by this mortgage, and intended to buy the realty at the foreclosure sale; and that plaintiff was "desirous of purchasing said property from [decedent], if and when [decedent] shall have obtained title thereto through said foreclosure suit, and be in a position to sell the same." By the contract itself, decedent agreed to cause the holder of the mortgage "to proceed with the foreclosure......with diligence, and press said suit to a conclusion at the earliest possible moment;" that he

would buy at the sheriff's sale, at a price not exceeding the amount of the mortgage, with interest, attorney's fees and costs; and that if some one else purchased the realty at that sale he would transfer the personalty back to plaintiff. The latter in turn agreed to pay decedent $1,650 on or before October 1, 1918, and, "on or before January 1, 1919, or as soon thereafter as deed shall be ready for delivery," a further sum equal to the costs, expenses and counsel fees incurred in obtaining title, and that simultaneously therewith he would give to decedent a mortgage for $55,000, secured upon said realty, payable in four years, with interest at six per cent per annum from October 1, 1918. It was further provided that proper credits should be allowed for any rents received or sales made, and that, if plaintiff obtained the property and gave the mortgage, decedent should retain the personalty, as additional security for the debt.

The title to the real and personal property referred to in this agreement was placed in the name of decedent, at the request of counsel for his brother, Dimmick D. Drake, the latter being the owner of all the bonds secured by the first $55,000 mortgage, which debt, as stated, was thereafter to be secured also by the personalty in Castle Inn, as had not theretofore been the case. It is agreed that decedent "paid no consideration to any one for the title acquired by him through said deed . . . . . the only consideration moving from anyone in this transaction [being] the consideration moving from" plaintiff, in whose favor, therefore, a resulting trust arose, subject, of course, to the terms of the agreement. Although executing it as a principal, decedent was really agent for his brother, and the latter, for this reason, agreed to indemnify decedent against loss.

On October 1, 1918, plaintiff tendered the $1,650, in the way hereinafter specified, but the foreclosure sale of the property did not take place until April 24, 1920, at which time decedent purchased it. On April 23,

1920, the day before the sale, plaintiff filed, in this case, a written bill in equity praying, inter alia, that, if decedent purchased at the sale, he should specifically perform his contract. On May 15, 1920, decedent took title from the sheriff, and thereupon, on June 11, 1920, plaintiff filed the printed bill, now being considered.. The final decree, as already recited, was in his favor.

Taking up the statement of the questions involved, in their chronological order, we find the first complaint is that the court below erred in allowing an amendment to the bill, after decedent had died. The contract provided for a tender of $1,650 on or before a given date, and the bill averred that on or before that time plaintiff paid that sum "as in said contract he covenanted and agreed to do." The amended averment is that plaintiff "directed [decedent] to apply the sum of $1,152.17, then in his hands and belonging to [plaintiff], on account of the $1,650," and tendered the balance in cash. It is objected that the amendment should not have been allowed, because decedent's mouth was then closed by death; but, under the statutes relating to the competency of witnesses, plaintiff's was also, and hence the statutory purpose was maintained. The latter did not wait to bring suit until after decedent had died; if he had done so, this fact would have affected the character and quantum of proof required to establish his contention, but not even then would he have lost the right to amend, which is expressly given by section 2 of the Act of May 4, 1864, P. L. 775. In Wilhelm's App., 79 Pa. 120, and Clark v. Pittsburgh Natural Gas Co., 184 Pa. 188, we held that the rules regarding amendments are the same in equity as at law, and that the true criterion is, Did plaintiff so state his cause of action originally as to show he had a legal right to recover what he subsequently claims? Tested thus, the amendment, as against the *objection stated,* was entirely proper. It is further contended, however, that it was not made in the way required by the equity rules. At the trial the only sug-

gestion on this point was because it was not "preceded by twenty days' actual notice......[and] has not been printed"; but this branch of the objection was then expressly withdrawn.

It is next contended that the court below erred "in granting a continuance and subsequently permitting the plaintiff to make further amendments to his bill, and introduce other testimony." There is no assignment of error raising this question, and hence it need not be discussed. We have examined the record touching it, however, and find no abuse of discretion; whereas these matters are so essentially discretionary that a very clear abuse would have to be shown before we would sustain a complaint in regard to them.

The third question argued is of a threefold nature: Was a tender made on October 1, 1918, of a proper amount, and was it refused? Upon abundant uncontradicted evidence, the chancellor found that a tender was made on that day, and hence we must approve the finding: Hardinge v. Kuntz, 278 Pa. 232. The then counsel for plaintiff testified that he "had sent [plaintiff] to make the tender, and it was that tender he [decedent] acknowledged to me as having been made." Again, decedent "knew that I was aware [plaintiff] had been to his office to make a tender, and it was that he discussed with me, saying [plaintiff] had made a tender to him in his office."

Was the tender a proper one, or, if not strictly so, can defendants be now heard to complain regarding it? The evidence showed that plaintiff and Dimmick D. Drake had another transaction, in which also decedent acted for his brother, and that, on August 27, 1918 (three and a half months after the execution of the agreement upon which the present suit is founded), plaintiff gave to decedent a draft for $10,000, part of which, as decedent's letter shows, was to be expended in paying "claim against you for $2,329.19 held by Arthur J. Hayslatt, [which] at your request will be paid from the $10,000

I am receiving to-day, provided this claim is one of the accounts which is to be cleared up in this transaction, as agreed upon between you and Dimmick D. Drake." Decedent deposited the draft, and sent another to counsel for his brother. It is conceded the Hayslatt claim was one of the transactions referred to and that it was settled for $1,177.02, leaving the balance of $1,152.17. It is a further undisputed fact, as shown by the account prepared by or for the attorney of Dimmick D. Drake and admitted by him to be correct, that out of the $10,-000, and a mortgage for $20,000 given at the same time, in the same transaction, a sum in excess of the $1,152.17 remained undistributed. It is claimed that that balance was never returned to decedent, but this is an immaterial matter; he was acting for his brother in both transactions, and hence, if the brother's attorney had it, it was to all intents and purposes in the hands of the brother, and neither decedent, who was merely agent for his brother, nor defendants, as decedent's executors, can properly object on this ground.

The present question therefore resolves itself into this: Where a contract of sale is made, and thereafter the vendee places money in the hands of the vendor for another specified purpose, and, after this has been accomplished, a balance belonging to the vendee is still in the hands of the vendor, can the former insist that this balance shall be applied on account of a tender to be made in the transaction of purchase? No just reason appears why he should not have this right. If the balance arose in a prior transaction to that of the purchase, perhaps we would have a different question, for then it might be argued that the vendee, if he wished to make use of it, should have so provided in the agreement of purchase. But where, as here, it is in a later proceeding, and it was the vendor's duty to return the money, he should not, in equity, be permitted to withhold it, thereby depriving the vendee of the means by which he could make the tender, and, as a result of this, defeating the contract of pur-

chase, and causing a forfeiture of the consideration originally paid by the vendee for the property. Equity abhors a forfeiture, and is, in name and fact alike, antagonistic to that which is inequitable; hence, under such circumstances as appear here, it will treat that as done which should have been done; will consider that the vendor has returned the money he should have returned, and that with it the vendee has completed his tender, as he elected to do. If it be admitted that a tender must be made in strict compliance with the agreement of purchase, it is none the less true that it is not invalidated because of a condition upon which the party has a right to insist, and to which the other cannot reasonably object: Schaeffer v. Herman, 237 Pa. 86. In the instant case, plaintiff had the right to insist that the money in the hands of the attorney for Dimmick D. Drake be applied on the contract of purchase, and to this neither of the brothers could reasonably object.

It must not be overlooked that decedent did not complain of the amount of the tender, nor, at the time, to the way in which it was made. He knew what was tendered, and he knew also, when talking to the witness whose testimony has been quoted, that the latter had sent plaintiff to make a tender comprising $497.83 in cash, and a credit of $1,152.17, remaining on the Hayslatt claim matter. The only fair inference from these facts is that decedent, who was a banker and business man, meant that that particular kind of tender had been made, when he admitted that plaintiff had called and made a tender. The witness explicitly said: "The tender......[decedent then spoke of] was the tender of $1,650 due at that time," and "it was that tender he acknowledged to me as having been made." Evidently, therefore, his refusal to accept the tender, until he could communicate with the attorney of his brother, was for the purpose of ascertaining from the attorney whether plaintiff's allegation as to the surplus arising from the settlement of the Hayslatt claim was correct. Had the amount been

inadequate, decedent would have promptly objected on that ground. This he did not do, either then or thereafter, so far as this record discloses. When he heard from his brother's attorney, he rejected the tender, without objecting to its amount; but it was then too late for plaintiff to make a cash tender of the entire sum, and this fact operates as a waiver of all objections to its character, and of the necessity for thereafter promptly making a better one: Schaeffer v. Coldren, 237 Pa. 77; 26 R. C. L. 628.

The last question involved is stated to be: "Was the court justified in making a decree for specific performance which extends the time for performance more than five years beyond the date fixed by the parties?" The facts of the case do not justify this inquiry. The agreement provides that the next payment, after the $1,650, shall be "on or before January 1, 1919, *or as soon thereafter as deed shall be ready for delivery."* Before this latter period arrived, decedent had repudiated his agreement and plaintiff had filed his bill. The agreement also provided that decedent should cause the mortgagee "to proceed with the foreclosure of said mortgage with diligence and press said suit to a conclusion at the earliest possible moment." The court below found this duty had not been performed. Decedent's answer made no denial of the fact, but on the contrary averred that the delays were "with the full knowledge and express consent of the plaintiff in this case." It is a strange argument that decedent should benefit, and plaintiff suffer, because he, plaintiff, consented to that which decedent did; but, in any event, there was no delay on plaintiff's part, after decedent was able to transfer the property.

Apparently appellants' principal contention on this phase of the case is that it is now impossible to comply with the clause of the agreement which provides that the mortgage of $55,000, to be given by plaintiff and his wife, "may be paid by [plaintiff] in four years with interest thereon from and after October 1, 1918," this period

having already expired. If that clause is to be treated as other than an option of plaintiff's, the supposed difficulty resulted from the delay of decedent or his brother (the latter, as owner of all the bonds accompanying the mortgage, being in a position to hasten the foreclosure suit), and hence neither of them can be heard to complain of it. Any question regarding the interest, can be taken care of on the accounting ordered by the court.

The decree of the court below is affirmed and the appeal is dismissed at the cost of appellants.