## UNITED STATES FIDELITY & GUARANTY CO. v. LEONG DUNG DYE. *

### No. 6397.

Circuit Court of Appeals, Ninth Circuit.

Sept. 15, 1931

WILBUR, Circuit Judge, dissenting.

A. G. M. Robertson, Alfred L. Castle, W. A. Greenwell, and Arthur Withington, all of Honolulu, Hawaii, for appellant.

Heen & Godbold, William H. Heen, and Norman D. Godbold, all of Honolulu, Hawaii, for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and NETERER, District Judge.

*Rehearing denied November 23, 1931.

NETERER, District Judge.

Appellee, beneficiary in an accident insurance policy issued to her husband by appellant on October 8, 1928, recovered judgment in the Circuit Court of the Territory of Hawaii for the face of the policy for the death of the assured on April 30, 1929, which judgment was affirmed by the Supreme Court of the Territory and appeal to this court prosecuted.

At the close of the evidence appellant moved for an instructed verdict in its favor, which motion was denied. After submission, the jury returned a verdict in favor of appellee. Thereafter appellant moved for judgment notwithstanding the verdict, which was denied. No challenged instruction of the court is before us for review. Section 2524, Rev. Laws Hawaii 1925. The sole question is: Under the evidence was the appellant entitled to a verdict or judgment as a matter of law?

In the application for insurance appears the following:

"I hereby apply to the United States Fidelity and Guaranty Company for a Policy to be based upon the following representation of facts: I understand and agree that the right to recovery under any policy which may be issued upon the basis of this application shall be barred in the event of any one of the following statements, material either to the acceptance of the risk or to the hazard assumed by the Company is false, or in the event that any one of the following statements is false and made with intent to deceive. I agree that this application shall not be binding upon the Company until accepted either by the Secretary at the Home Office or by an agent duly authorized to issue policies. * * *

"10. No application ever made by me for Accident, Health, or Life Insurance has been declined, or notice of action withheld, nor has any such policy of insurance been cancelled or renewal refused, except as herein stated: No exceptions."

Did the insured make a false statement with relation to interrogatory 10, in that he made application for lfe insurance and was declined? In its answer to the complaint, defendant made specific issue of the making and falsity of the statement, alleging that the policy was issued on the following express conditions and agreements: "That the statements and declarations made in the application for the policy and on the faith of which it was issued were in all respects true, and without suppression of any fact relating thereto affecting the interests of the defendant, and upon the further condition that in case of violation of the aforesaid condition, among others, the policy should become null and void; that the said Harry Apau Dye did violate the condition, in this, that the statements and declarations made by him in his application for the said policy were not in all respects true, but were false in the following respect, to wit: that in the application for the policy and on the faith of which it was issued, the statement was made and signed by the said Harry Apau Dye, 'No application ever made by me for Accident, Health or Life Insurance has been declined, or notice of action withheld, nor has any such policy of insurance been cancelled or renewal refused,' whereas in fact he had prior thereto applied for insurance upon his life and been refused on the ground that he was an undesirable risk but shortly before his said application to the defendant, and that if the defendant had known of said refusal it would have declined to write said policy contract of insurance."

And further alleged that on November 25, 1929, it delivered to the attorneys for plaintiff a letter denying liability; that on said date it tendered in legal coin to the attorneys for plaintiff the sum of $36, the entire premiums paid on said policy, and denied liability on the ground that said policy was null and void because of fraud practiced on the defendant; and further denied that the death of the assured was accidental, but that it was the result of suicide. Plaintiff replied asserting that the defense of false representation should not be permitted, because defendant had retained the premium for more than seven months after the discovery of the alleged fraud, and alleged that the tender was insufficient because (1) made too late, (2) no offer of interest on the amount retained by the defendant for more than a year was made, and (3) improperly made to plaintiff's attorneys instead of to the personal representative of the deceased; and further that the defendant failed to perform any act seeking to cancel the policy sued on until after the term for which it was issued had expired.

The agent who negotiated the policy of insurance with the deceased was called as a witness, shown the back of a policy, and asked: "Is that a copy of the application he made?" Objection was made, the court later permitted the question, and the witness answered: "Yes, this is a copy of the application made."

"Was that made out in your office? A. Yes.

"Q. And who made it out, Harry Dye or you? A. I don't remember whether I copied the application or asked him questions, or whether he copied it or not. I don't know.

"Q. Did he sign it? A. Yes." (This was answered over appellee's objection, and exception noted.)

On cross-examination the witness stated:

"A. This was just a copy of the usual form of application.

"Q. And the only reason you say it is a copy of the one that Dye signed is because his name appears there, Henry Apau Dye, is that correct? A. It is a copy of that form of application I would use for—

"Q. But there is nothing to indicate that Dye signed the original of that? A. Nothing here, no.

"Q. You said you did not recall whether you filled this application out or whether Mr. Dye did? A. I don't remember whether he did or I did fill that out or the original.

"Q. As a rule, however, is it not a fact that the agent usually filled them out? A. There is no set rule, sometimes the applicant likes to fill it out, sometimes I fill it out, there is no particular form (rule) that one follows.

"Q. Isn't it a fact, Mr. Woolaway, that often in filling out these applications, after you get the man's name, residence, where he was born, and his age and height and weight, where he lives, where he works, the rest of it is filled out by the agent often without asking him any further questions? A. That is often done.

"Q. It might have been done in this case, as far as you recollect? A. It might have."

On redirect examination the witness was asked:

"Q. Do you remember whether you filled out any of these questions without asking him any questions? A. No; there was a question there on life insurance that appears in the application. I remember talking to him on that point.

"Q. With Dye? A. Yes.

"Q. What did he say? A. The question of life insurance—

"Q. What was the conversation? A. Harry Dye told me that he just secured a policy from John Hancock Co., that was all.

"Q. Did he tell you anything else? A. Nothing that I remember. I remember the subject came up on the subject of life insurance. * * *

"Q. In connection with your asking as to the question of whether he had, that he had made application for life insurance, and whether or not you remember asking him about applications in general of life insurance or accident insurance? A. My question with him on life insurance was not in connection with application, it was what he carried, and I remember him telling me that he had received a John Hancock policy from the International Trust Co. agents, but I don't remember any reference to applications.

"Q. Do you remember asking him this question— A. I don't remember asking that question. I know that is a part of the application that he filled out. I don't remember whether I asked him that specifically.

"Q. Did he fill this application out or did you? A. As I say, I don't remember. I think he filled it out himself."

There was evidence that the deceased had made application for life insurance to the Prudential Life Insurance Company and was rejected, but there is no proof of notice of rejection to the applicant. The witness stated that he was notified "by letter." There is, however, no evidence of delivery by messenger, nor proof that it was deposited in the post office, postage prepaid, addressed to a given address, the usual place of residence of the deceased. Proof of notice that the deceased knew he had been rejected for life insurance was the essence of the issue of fraud and deceit (Wharton v. Aetna Life Ins. Co. (C. C. A.) 48 F. (2d) 37), and the burden of proof was on defendant. This court must determine the issue upon the record as made, especially since the dead cannot speak. And no inference may be drawn in favor of defendant because on cross examination plaintiff could have shown manner of delivery, and omission was a tacit admission. The plaintiff was not required to speak. Fraud is never presumed, nor may the court presume tacit admissions in a link to establish fraud, in the absence of proof.

But this is not the only instance where the proof stopped short of a material issue. The doctor called as a witness by the defendant was asked:

"Q. At some time in 1928, I ask you whether or not you examined Harry Dye for insurance? A. I did.

"Q. What company? A. Prudential.

"Q. What was the date of that examination? A. June 8, 1928, according to my records. That is all."

If the assured was physically and organically unfit for life insurance, this doctor, the only living witness produced to whom the fact was known, was not asked what he found, or what notice, if any, he gave to the applicant as to his noninsurability. The testimony stopped short of the vital fact. It is not enough to say that he could have been cross examined. The defendant no doubt knew what the further answer would be. The insured was dead. The beneficiary had a right to require strict proof and that the defendant establish the falsity with intent to deceive and defraud. The application was obviously written by the agent of the defendant, and there is no evidence of evasion or falsity by the assured, but all questions asked were truthfully answered; so stated by defendant's agent. He was not asked the disputed question, and there is no competent evidence before the court that the assured signed the application with intent to deceive and defraud, or at all. If he did, he was misled into so doing, not having been asked question 10 and not knowing that the denial was written there by the agent for the defendant. The original application would show beyond question who filled in the application and whether it was signed or not. Defendant's failure to produce the original at the trial appears conclusive that it would not sustain its contention. And the failure to show by defendant's doctor notice to the assured of noninsurability, or his noninsurable condition, and the absence of proof of notice of rejection, leaves a condition upon which reasonable minds would differ as to the signing of the application by the assured and the making of the statement attributed with intent to deceive and defraud.

■■ The evidence is inconclusive, and the conclusions of the trial court thereon are binding on this court on appeal. Standard Brewery v. Lacanski, 60 Ind. App. 499, 111 N. E. 80. There was no credible evidence upon which the motion for directed verdict could be predicated. "Issues that depend on the credibility of witnesses, and the effect or weight of evidence, are to be decided by the jury." Gunning v. Cooley, 281 U. S. 90, 94, 50 S. Ct. 231, 233, 74 L. Ed. 720. The only evidence as to the signing of the application was given by the agent of the defendant, an interested witness, and it was for the jury to weigh his statement with the statement as to his conversation on life insurance with the

assured and the defendant's failure to produce the original application at the trial. "Where the evidence upon any issue is all on one side or so overwhelmingly on one side as to leave no room to doubt what the fact is, the court should give a peremptory instruction to the jury." Gunning v. Cooley, supra.

■■ The motion for directed verdict was properly overruled. In Wharton v. Aetna Life Insurance Co. (C. C. A.) 48 F.(2d) 37, 39, the court said: "Where the evidence is of such a character as reasonable men may reach different conclusions, the case should be submitted to the jury." It is evident that upon the record uncertainty exists with relation to the established issue, and since fair-minded men would honestly draw different conclusions, the question was not one of law, but of fact for the jury. See, also, Mansfield Hardwood Lumber Co. v. Horton (C. C. A.) 32 F.(2d) 851; Public Utilities Corporation v. McNaughton (C. C. A.) 39 F.(2d) 7.

■ The averment of the plaintiff that the claim of fraud was not timely made will be passed without discussion. Before a policy can be avoided by answer in civil suit, tender must be made of the full premium, together with the legal rate of interest from the date of the receipt of the premium to the date of the tender. The following, while not fraud cases, are applicable to contractual obligations: Lilienthal v. McCormick (C. C. A.) 117 F. 89; Pacific Mail S. S. Co. v. Western Pac. R. R. Co. (C. C. A.) 251 F. 218; Rolfe v. Patrons' Androscoggin Mut. Fire Ins. Co., 106 Me. 345, 76 A. 879; Smith v. Pilcher, 130 Ga. 350, 60 S. E. 1000; Bolton v. G. C. Gifford & Co., 45 Tex. Civ. App. 140, 100 S. W. 210; Stieglitz v. Cohen, 69 Misc. Rep. 634, 126 N. Y. S. 145; Briede v. Babst, 131 La. 159, 59 So. 106; Bell v. Riggs, 34 Okl. 834, 127 P. 427, 41 L. R. A. (N. S.) 1111; Francis v. Brown, 22 Wyo. 528, 145 P. 750. It is not enough for the defendant to say on this appeal that it is willing to pay any interest, in addition to the tender, that the court may require. To be a sufficient tender, the principal, together with the legal rate of interest for the time the premium was held, must be tendered.

■ Nor can this court say that the beneficiary is estopped from denying the claimed representations and statements of fraud because of the delivery of the policy and the retention thereof by the assured with the disputed question and answer indorsed thereon. This is a claim that would have sup-

ported an equitable action to rescind the contract, but if relied upon in defense of an action on the policy it must be pleaded, and it cannot be raised for the first time in this court. It was not pleaded and was not raised in the motion for a directed verdict, nor by requested instruction to the jury, or in the motion for judgment notwithstanding the verdict, nor is it included in the record to this court. Making the false statement with intent to deceive and defraud was the sole issue. Defendant had a right to elect as to whether it would (1) rely upon the express statement made, as alleged in its answer, or (2) rely upon the matter of estoppel by reason of the receipt of the policy with the indorsement thereon and the adoption of the statement as a matter of law, thereby creating an estoppel to deny the truth thereof when claim was made thereunder; or it might have claimed both defenses in separate counts in one answer.

In Robinson & Co. v. Belt, 187 U. S. 41, 23 S. Ct. 16, 19, 47 L. Ed. 65, the court said: "While it is the duty of this court to review the action of subordinate courts, justice to those courts requires that their alleged errors should be called directly to their attention, and that their action should not be reversed upon questions which the astuteness of counsel in this court has evolved from the record. It is not the province of this court to retry these cases de novo."

This question is not presented in the briefs, but it is a matter which the court must consider upon this issue first being raised. Rarely has this question been before the Supreme Court. However, in Gilmer v. Poindexter, 51 U. S. (10 How.) 257, 268, 13 L. Ed. 411, the court said: " * * * It must be pleaded if there be an opportunity; otherwise, the party omitting to plead it waives the estoppel. See 2 Smith's Leading Cases, 457, and the authorities there cited."

See, also, Standard Brewery v. Lacanski, 60 Ind. App. 499, 111 N. E. 80; Hall v. Henderson, 126 Ala. 449, 28 So. 531, 61 L. R. A. 621, 85 Am. St. Rep. 53; Cloud v. Malvin, 108 Iowa, 52, 75 N. W. 645, 78 N. W. 791, 45 L. R. A. 209; Jacobs v. First Natl. Bk., 15 Wash. 358, 46 P. 396; Interstate Savings, etc., Ass'n v. Knapp, 20 Wash. 225, 55 P. 48, 931.

This issue was known to the parties, and there was ample opportunity to plead it. On failure to do so, it was waived; and justly so. To permit the raising of this issue for the first time in this court would deprive the beneficiary of an opportunity to refute the claimed estoppel, a matter upon which the beneficiary should have an opportunity to be heard. Other elements enter into the question of estoppel than those disclosed by the record. Beneficiary was entitled to her day in court upon that issue.

There is nothing in the record to show that the case was not fully and fairly submitted by the court to the jury upon every issue raised; and it was manifestly the court's duty so to do. The jury having determined against the defendant, every reasonable intendment in favor of the verdict and judgment should be indulged in by this court. There is no contention that premium and interest thereon was tendered; nor was interest tendered when insufficiency of tender for lack of interest was charged by the reply. Lack of tender alone is sufficient to defeat rescission. And estoppel was not an issue from any viewpoint of approach. The purported answer to the interrogatory 10 never reached the dignity of an established or conceded fact. It was clearly an open issue upon which fair and reasonable minds might differ, and the court so concluded in denying the motion for a directed verdict. The materiality of the statement in the application never reached the point where it could be attributed probative value. While the materiality was discussed by the Supreme Court of the territory, it is of no importance, since the judgment of the nisi prius court was affirmed.

The judgment is affirmed.

WILBUR, Circuit Judge (dissenting).

The insurance policy herein sued upon stated that the policies were issued in consideration of $36.00 and "of the statements in the application for this policy, copy of which is endorsed hereon and made a part hereof." By this reference the policy makes the attached application a part thereof, and the question as to whether or not the applicant signed the original application is wholly immaterial. Having accepted the policy and the benefits thereunder he is bound by its terms, which include the provision that the answers of the insured in the attached applications were a part of the consideration. While this proposition is sufficiently obvious to make unnecessary the citation of authority, it has been expressly decided in the Columbian Nat. Life Ins. Co. v. Harrison (C. C. A.) 12 F.(2d) 986, that he could not sue on the policy and deny that he signed the application thereto attached. The reason which supports this conclusion would apply equally to an unsigned application attached

to the policy and made a part thereof, as in the case at bar.

The opinion of the majority of the court proceeds upon the assumption that there was an issue as to whether or not the decedent made the representations contained in the copy of the application, made a part of the policy, and that upon this issue the jury were justified in concluding that under the evidence no such representations were made. There was no such issue raised in the pleadings. In her complaint the appellee set out the policy in haec verba and the copy of the application indorsed thereon and referred to in the policy as a part thereof. If the policy as written and the application incorporated therein did not truly express the contract of the parties, the burden was upon the appellee to allege and prove that fact. The question whether or not the policyholder was estopped to contest the contents of the application, and the consequent burden of the insurance company to set up the estoppel, is, in my judgment, not involved in the case. The appellant was standing upon the terms of the policy, and the appellee was likewise doing so. I am therefore of opinion that the question as to whether or not the insured made the representations contained in the application was established by the contract between the parties and admitted by the pleadings, and for those reasons was not a matter for the consideration of the jury.

The testimony shows without dispute that the insured had applied to the Prudential Life Insurance Company for life insurance as early as July 5, 1928. This application was rejected. The notice of rejection sent by the company to its agent is contained in the record, and the letter addressed by the company's agent to the applicant at his place of residence is also contained in the record. Gladys Golden, a stenographer in the employ of the Hawaiian Trust Company, the agent of the Prudential Life Insurance Company, testified as follows:

"Mr. Withington (for appellant): Did you send notice to the applicant of the rejection? A. Yes.

"Q. You notified Harry Dye? A. Yes, by letter.

"Q. Have you got a copy of that letter? A. Yes, I have it right here.

"Mr. Withington: We offer it in evidence.

"Mr. Kelley (for appellee): No objection."

The testimony of the witness, received without objection, and the receipt in evidence, without objection, of the copy of the letter containing notice of rejection was sufficient to prove that the applicant was notified of his rejection. It is true, as stated in the main opinion, that there was no specific proof as to the method by which this written notice was conveyed to the applicant, but the statement of the witness, that the applicant was notified of the rejection, implies that the witness knew that the applicant had received the letter or notice. No point was made in the lower court as to the sufficiency of this evidence to show that the applicant received the notice. It does not appear that the point was urged before the Supreme Court of Hawaii, the opinion of that court merely stating in this regard that "at the time this application was made the insured had applied to the Prudential Insurance Company of America for a life insurance policy and his application had been rejected and he had been notified." The only allusions to the matter contained in the brief of the appellee are the assertion appearing in "comments on the evidence," to the effect that if the insured had been declined for life insurance by the Prudential "it does not appear with any degree of certainty that the applicant had knowledge of it," and the statement, in a list of "appellee's contentions," that, "It cannot be said from the evidence that Harry Apau Dye had actual knowledge of being declined for life insurance." The appellant assumes in its brief that the notice of rejection by the Prudential Company was received by the decedent, and this assumption is not disputed by the appellee in any other manner than by the brief statements just referred to. The case should be considered here in the appellate court on the same theory that it was considered in the trial court, and that theory involves a tacit admission of the plaintiff that the assured had been notified of the rejection of his application for life insurance in the Prudential Company.

I cannot agree with the statement that it is a question for the jury to determine whether reasonably prudent and intelligent men would have considered the statement at the time as a substantial increase in the risk insured against as applied to the situtaion presented by the case at bar. It is true that the courts have sometimes held that the question of whether or not a representation is material is a question for the jury to determine, and in other cases it has been held that it is a question for the court to determine. The law is well settled to this effect, and the question in each individual case presented is whether or

not the question in that case is one for the court or the jury. It is uniformly held that where an insurance company requires the applicant to answer definite questions concerning himself or affecting his health, the answers to the questions are material for the reason that they form the basis of the contract between the parties. Thus, where a perfectly definite question is asked and a perfectly clear answer is given, and the answer is untrue, the answer is held to be material as a matter of law, unless there is a doubt as to the real meaning of the parties as distinguished from a literal interpretation thereof. For illustration, if an applicant is asked to name the physicians that he has consulted within five years prior to the application and he omits from the list the name of a physician he has consulted with reference to the health of some member of his family, it is clear that although the statement would be untrue the parties did not contemplate such a consultation of a physician as involved in the issuance of insurance to the applicant, and therefore, although the answer is given in response to a perfectly definite question, and is definitely untrue, the untruthfulness of the answer would be immaterial as a matter of law. Whereas, on the other hand, if the applicant omitted to name a physician he had consulted within that period with reference to his heart condition and had been advised that he was likely to drop dead at any moment, it is clear that while the answer would be no more false in a literal sense than the first answer with reference to the consultation of a physician concerning the health of a member of his family, the answer would be untrue and the untruth would be clearly material to the question under consideration by the insurance company and the applicant at the time the negotiations for insurance were under consideration. In such a case, the answer would be material as a matter of law and the court instructing the jury should so inform them. There is, however, a twilight zone between these two extremes where reasonable men might differ as to the purport or intent or the proper interpretation of the answer given by the applicant to a question asked by the insurer. In such a case it was said that the question of materiality is for the jury. I am inclined to think that this statement is not strictly accurate, that the question for the jury to determine under proper instructions from the trial court is whether the applicant intended to answer untruthfully the exact question asked by the insurer. This question, of course, is usually presented with relation to a categorical and terse answer to a question which is sometimes compound, complex and complicated. The most familiar illustration of this situation is with reference to the question, "What sickness or illness have you had within the last five years?" The answer may be, "None," or, frequently, some comparatively serious sickness may be mentioned and others omitted. In view of the fact that the condition of health and sickness is always relative it has been held as a matter of law that such a representation does not include minor, temporary, and inconsequential illness which it can be seen would not, in view of either the insurance or the applicant, be deemed to have affected the risk. In such a case the illness may be such that it may be said, as a matter of law, not to be within the contemplation of the parties. A good illustration of the matter under consideration is the recent case of Stipcich v. Insurance Co., 277 U. S. 311, 48 S. Ct. 512, 72 L. Ed. 895, where it was held that concealment of a diagnosis of a duodenal ulcer avoided the policy, although such diagnosis occurred after the application for the policy was made but before it was delivered. There is no disagreement in the authorities upon the proposition that the question of materiality of representation is one to be decided by the court where it is clearly material or where it is clearly immaterial, and one to be decided by the jury when it cannot be said, as a matter of law, that it is clearly material or clearly immaterial. The various decisions upon this subject must be read in the light of this general principle, and the disagreement of the authorities is not upon the broad proposition as to whether the court or jury should determine the question, but as to whether or not the materiality of a specific question and answer in a given case was for the court or jury. In this case it is unnecessary to consider this twilight zone or this area of disagreement in the multitude of authorities upon such question, for it is uniformly held that the representation that the assured has not been rejected by another insurance company is a material representation, as a matter of law, and the only variance in the authorities hereon is as to the intent of the question and answer. For instance, as to whether or not it was in the contemplation of the parties in asking the questions upon applications for accident insurance to cover rejections for life insurance policies where the question is broad and indefinite. There is no question as to the meaning of the question and answer in the case at bar.

The rule is thus stated in Cooley's Briefs on Insurance, vol. 4, p. 3228: "Among the

questions invariably asked of the applicant for life insurance is whether he had ever applied to any other company for insurance and been rejected. The purpose of the question is perhaps twofold—to discover whether the risk has ever been regarded as unsafe by other insurers, and to show the applicant's anxiety for insurance. Whether the applicant has ever applied to other companies for insurance and been rejected is, therefore, regarded as material to the risk, and a statement in this regard whether made as a warranty or as a representation, will, if false, avoid the policy." In support of this proposition Cooley cites a multitude of authorities.

It is said in some of the text-books and decisions that the materiality of a misrepresentation is always a question for a jury. For instance, Cooley, in his Briefs on Insurance, vol. 3, p. 1935, states: "Though more or less qualified in those states where statutes have been adopted relating to the effect to be given to immaterial statements, it is nevertheless the general rule that the materiality of the misrepresentation is a question for the jury."

Richards, in his work on Insurance (3d Ed.) § 101, states: "Whether a representation be material or not, and whether substantially true or not, are questions of fact, and ordinarily are to be determined by the jury; but when the testimony in its entirety, relating to a question of fact, is such that to a reasonable mind only one inference is deducible from it, the issue becomes one of law, and is to be determined by the court." In section 97 of his work he states: " * * Where an applicant erroneously stated that no other company had refused to grant him life insurance it was held to be a material misrepresentation, and good ground for decreeing a cancellation of the policy."

In Joyce on Insurance, it is stated (section 2075), after dealing with the subject of warranties: "And although the policy does not declare the statements warranties, still if applicant's misrepresentations that an accident policy of insurance had been canceled or renewal refused is falsified, as where he had received notice of cancellation and had endeavored to obtain insurance to replace that cancelled, in such case the materiality is apparent as a matter of law and as the misrepresentation was also intentional, recovery was precluded." Citing Maryland Casualty Co. v. Eddy (C. C. A.) 239 F. 477.

In May on Insurance (4th Ed.), an earlier work (1873), the author states in section 184:

"In case of warranty the question of materiality does not arise. In case of representation it always does; and if this materiality depends upon facts and circumstances, it is a question for the jury, to be inferred from those facts and circumstances, as is also the materiality of a concealment. The test of the materiality of a misrepresentation or concealment is, that it influences the insurer in determining whether to accept the risk, and what premium to charge." The author, however, states (section 185) that where the parties to an insurance policy have put their representations in the form of question and answer, that fact shows the representations to be material, stating: "The inquiry and answer are tantamount to an agreement that the matter inquired about is material, and its materiality is not therefore open to be tried by the jury. That this materiality is under such circumstances a question for the court, has been frequently decided, especially in cases where untrue answers are given to questions as to title. Whether certain statements are or are not material, is a matter upon which there may be a difference of opinion. Nothing therefore can be more reasonable than that parties entering into a contract of insurance shall determine for themselves what they think to be material. And that determination is conclusive."

In determining the weight of this authority, it is proper to note that there have been a multitude of decisions upon the subject since this text-book was written, and that there have also been statutory provisions in many states limiting the effect of such statements to their effect as representations rather than warranties.

In Ruling Case Law, published in 1916, vol. 14, § 258, it is said: "A statement as to previous rejections is material as a matter of law and if false avoids the policy regardless of the good faith of the applicant."

If we assume that there is confusion or disagreement in the cases upon the question as to whether or not materiality of such representation is a question for the jury, it must be borne in mind that the question has arisen under different forms of policies, in different jurisdictions, and under different legislation, which accounts in a measure for this diversity. So far as the case at bar is concerned, the matter of the materiality of misrepresentations with reference to denials of applications for life insurance in other companies, and as to whether or not the question is one for the court or jury, is definitely

settled by comparatively recent decisions of our Supreme Court.

In Aetna Life Ins. Co. v. Moore, 231 U. S. 543, 34 S. Ct. 186, 187, 58 L. Ed. 356, the Supreme Court had occasion to consider a policy of life insurance issued in the state of Georgia and governed as to its interpretation by the Code of Georgia. It had been held by the Supreme Court of Georgia that under the Code of that state the parties could not make representations as to immaterial matters warranties, and therefore it was incumbent upon the insurance company to establish that the representations claimed by it to avoid the policy were material to the risk and untrue. The application of the insured contained the following questions and answers: "16. Has any proposal or application to insure your life been made to any company, association or agent on which a policy of insurance is now pending? Or has any such proposal or application ever been made for which insurance has not been granted, or on which a policy or certificate of insurance was not issued in full amount, and of the same kind as applied for? If so, state particulars and the names of all such companies, associations, or agents. Answer: None." While there were a number of other questions and answers involved in the opinion, we will confine our consideration of the case to this particular question and answer. The insurance company had moved for a directed verdict. Discussing this question, the Supreme Court, speaking through Justice McKenna, after quoting from section 2479 of the Georgia Civil Code 1910, the provision that, "Every application for insurance must be made in the utmost good faith, and the representations contained in such application are considered as covenanted to be true by the applicant. Any variation by which the nature or extent or character of the risk is changed will void the policy," went on to say:

"But who is to decide—the court or jury —whether a variation be of the quality described? We have seen how explicit the policy is, and this court in Jeffries v. Economical Life Ins. Co., 22 Wall. 47, 22 L. Ed. 833, and Aetna Life Ins. Co. v. France, 91 U. S. 510, 23 L. Ed. 401, held that the parties to the contract may make the inquiries and answers material, and that therefore their materiality is not open to be tried by a jury.

"These cases recognize the right of the insurer and the insured to make their own contract and determine for themselves what representations shall be material.

"How far has this simple rule and the right of the parties been changed by the Georgia Code?"

The court then called attention to the decisions of the Supreme Court of Georgia holding that statements of the insured made in his application were deemed warranties, and stated as follows:

"We have seen questions were addressed to Salgue as to the names and residence of the physicians he had employed or consulted, and whether any physician had expressed an unfavorable opinion upon his life with reference to life insurance, and also whether any proposal or application to insure his life was pending in another company, or, if made, had not been granted. * * * To the third [above] question he answered, 'None.' The truthfulness of the answer is asserted notwithstanding it appeared from the testimony that he had made application to the Penn Mutual Company, which application had not been granted. * * *

"It is contended by respondent that this testimony shows that Salgue's application to the Penn Mutual was not rejected, but was withdrawn; and, besides, whether it was rejected or withdrawn was a question for the jury. We are unable to concur with *either* [italics ours] contention. The question was a very broad one. It was whether any proposal or application had been made for which insurance had not been granted, and particulars were asked for, 'and the names of all such companies, associations, or agents.' Regarding the sense of the question—indeed, if not its letter—the answer was untruthful. * * * If it had been answered according to the facts, the company would have received information of circumstances certainly material for it to consider. * * *

"In Phoenix Life Ins. Co. v. Raddin [120 U. S. 183, 7 S. Ct. 500, 30 L. Ed. 644], there is a clear definition of principles. Answers to questions propounded to an applicant, it was held, will be considered representations unless clearly intended by both parties to be warranties, as to which substantial truth in everything material to the risk is all that is required of the applicant. And it was decided: 'Whether there is other insurance on the same subject, and whether such insurance has been applied for and refused, are material facts; at least, when statements regarding them are required by the insurers as part of the basis of the contract. * * *

Where an answer of the applicant to a direct question of the insurers purports to be a complete answer to the question, any substantial misstatement or omission in the answer avoids a policy issued on the faith of the application.' "

It will thus be observed that the Supreme Court decided that the answer to the question as to other applications for insurance was material, and also decided that the question of whether or not the answer in that particular case was false was a question for the court and not for the jury, in view of the admitted facts.

In 1874 the Supreme Court in Jeffries v. Life Ins. Co., 22 Wall. 47, 51, 22 L. Ed. 833, supra, had occasion to consider the effect of an untrue answer of the insured in his application as to previous applications made to other companies. The policy in that case was issued in Missouri, and it appears that that state, on March 23, 1874, had passed a statute to the general effect "that misrepresentations not relating to the risk, shall not vitiate a policy, and that in all cases the materiality shall be a question for the jury." The policy, however, had been issued in 1870 and the insured died in 1871. The court did not refer to the Missouri statute in its decision, but in dealing with the question of materiality the opinion proceeds as follows:

"We are to observe, also, that other clause of the policy, in which it is declared that this policy is made by the company and accepted by the insured, upon the express condition and agreement that such statements and declarations are in all respects true. This applies to all and to each one of such statements. In other words, if the statements are not true, it is agreed that no policy is made by the company, and no policy is accepted by the insured.

"The proposition at the foundation of this point is this, that the statements and declarations made in the policy shall be true.

"This stipulation is not expressed to be made as to important or material statements only, or to those supposed to be material, but as to all statements. The statements need not come up to the degree of warranties. They need not be representations even, if this term conveys an idea of an affirmation having any technical character. Statements and declarations is the expression; what the applicant states and what the applicant declares. Nothing can be more simple. If he makes any statement in the application it must be true. If he makes any declaration in the application it must be true. A faith-ful performance of this agreement is made an express condition to the existence of a liability on the part of the company.

"There is no place for the argument either that the false statement was not material to the risk, or that it was a positive advantage to the company to be deceived by it.

"It is the distinct agreement of the parties, that the company shall not be deceived to its injury or to its benefit. The right of an individual or a corporation to make an unwise bargain is as complete as that to make a wise bargain. The right to make contracts carries with it the right to determine what is prudent and wise, what is unwise and imprudent, and upon that point the judgment of the individual is subject to that of no other tribunal.

"The case in hand affords a good illustration of this principle. The company deems it wise and prudent that the applicant should inform them truly whether he has made any other application to have his life insured. So material does it deem this information, that it stipulates that its liability shall depend upon the truth of the answer. The same is true of its inquiry whether the party is married or single. The company fixes this estimate of its importance. The applicant agrees that it is thus important by accepting this test. It would be a violation of the legal rights of the company to take from it its acknowledged power, thus to make its opinion the standard of what is material, and to leave that point to the determination of a jury. The jury may say, as the counsel here argues, that it is immaterial whether the applicant answers truly if he answers one way, viz., that he is single, or that he has not made an application for insurance. Whether a question is material depends upon the question itself. The information received may be immaterial. But if under any circumstances it can produce a reply which will influence the action of the company, the question cannot be deemed immaterial. Insurance companies sometimes insist that individuals largely insured upon their lives, who are embarrassed in their affairs, resort to self-destruction, being willing to end a wretched existence if they can thereby bestow comfort upon their families. The juror would be likely to repudiate such a theory, on the ground that nothing can compensate a man for the loss of his life. The juror may be right and the company may be wrong. But the company has expressly provided that their judgment, and not the judgment of the juror shall govern. Their right thus to con-

tract, and the duty of the court to give effect to such contracts, cannot be denied. * * *

"Many cases may be found which hold, that where false answers are made to inquiries which do not relate to the risk, the policy is not necessarily avoided unless they influenced the mind of the company, and that whether they are material is for the determination of the jury. But we know of no respectable authority which so holds, where it is expressly covenanted as a condition of liability that the statements and declarations made in the application are true, and when the truth of such statements forms the basis of the contract."

While the Supreme Court in this early case did not pass upon the effect of the Missouri statute above referred to, it did so in the case just considered (Aetna Life Ins. Co. v. Moore, supra) under a statute of similar effect as determined by the Supreme Court of the state of Georgia.

In a later case, Mutual Life Ins. Co. of N. Y. v. Hilton-Green, 241 U. S. 613, 36 S. Ct. 676, 677, 60 L. Ed. 1202, the Supreme Court again was called upon to consider the effect of an application for life insurance containing the following question and answer: "22. I have never made an application for life insurance to any company or association upon which a policy has not been issued on the plan and premium rate originally applied for, except as to the following companies or associations: None, and no such application is now pending or awaiting decision." The policies were issued in Florida, and contained, among others, the following agreements: "All statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties. * * * In November, 1908, he [the insured] applied to Prudential Insurance Company of America for a life insurance policy." One of the principal questions involved in the decision is not germane to the case at bar, and we omit a statement in reference thereto. The insurance company moved for a directed verdict, which was refused. The Circuit Court of Appeals (211 F. 31) in deciding the case, held: "That, under the language of the policies involved in this suit, the defendant, to avoid the policies for false representations, must establish their falsity, materiality, and the knowledge of the insured, actual or imputed, of their falsity. * * * So with regard to the representation of the insured that there had been no previous application for insurance made by him and rejected, or not passed upon favorably by the insurance company. This was untrue, must have been known to have been untrue by the insured when he made it, and it was material. Either of these two last representations would be sufficient to avoid the policies, unless the defendant is estopped to rely upon them, by reason of its knowledge of their falsity."

After quoting this portion of the decision of the Circuit Court of Appeals, Mr. Justice McReynolds, speaking for the court, states: "Considered in most favorable light possible, the above quoted incorrect statements in the application are material representations; and, nothing else appearing, if known to be untrue by assured when made, invalidate the policy without further proof of actual conscious design to defraud. Moulor v. Am. Life Ins. Co., 111 U. S. 335, 345, 4 S. Ct. 466, 28 L. Ed. 447, 450; Phoenix Life Ins. Co. v. Raddin, 120 U. S. 183, 189, 7 S. Ct. 500, 30 L. Ed. 644, 646; Aetna Life Ins. Co. v. Moore, 231 U. S. 543, 556, 557, 34 S. Ct. 186, 58 L. Ed. 356, 365, 366; May, Ins. (4th Ed.) § 181."

After deciding that the information of the local agent of the insurance company as to the falsity of the applicant's answers was not binding upon the company, the opinion of Mr. Justice McReynolds proceeds as follows:

"The assured at the least consciously permitted an application containing material misrepresentations to be presented by subordinate agents to officers of the insurance company under circumstances which he knew negatived any probability that the actual facts would be revealed; and later he accepted policies which he must have understood were issued in reliance upon statements both false and material. He could claim nothing because of such information in the keeping of unfaithful subordinates. Moreover, the false representations accompanied and were essential parts of the policies finally accepted. * * * Beyond doubt an applicant for insurance should exercise toward the company the same good faith which may be rightly demanded of it. The relationship demands fair dealing by both parties. N. Y. Life Ins. Co. v. Fletcher, 117 U. S. 519, 529, 533, 534, 6 S. Ct. 837, 29 L. Ed. 934, 939, 940; Assurance Co. v. Bldg. Ass'n, 183 U. S. 308, 361, 22 S. Ct. 133, 46 L. Ed. 213, 234; U. S. Life Ins. Co. v. Smith, 92 F. 503, 34 C. C. A. 506.

"Considered with proper understanding of the law there is no evidence to support a verdict against petitioner, and the trial court should have directed one in its favor."

These decisions of the Supreme Court of the United States settle the question so far as this court is concerned that misrepresentations with relation to the rejection of the applicant by other life insurance companies are material as a matter of law, and if false and known to be false by the insured, invalidate the policy.

There is nothing in Security Life Ins. Co. v. Brimmer (C. C. A.) 36 F.(2d) 176, Northwestern Mut. Life Ins. Co. v. Wiggins (C. C. A.) 15 F.(2d) 646, or Hardman et al. v. Firemen's Ins. Co. (C. C.) 20 F. 594, cited by respondent, inconsistent with the foregoing conclusions; but if there is they cannot stand as authority against the express decision of the Supreme Court of the United States to the contrary.

The main opinion in his case assumes that the materiality of the question and answer with reference to rejection for insurance depends upon the cause of rejection rather than upon the fact of rejection. It is true that in most of the cases in which rejection has been relied upon as the basis for asserting the falsity of the representation the rejection was because of defective health, which would rather obviously affect the risk assumed by the insurance company issuing the policy. But, as pointed out in the decisions from which we have quoted, the question of the health of the applicant is not the only reason an insurance company seeks information concerning such rejections. In this connection, however, it may be well to point out that the record in this case seems to show that the rejection was for a cause which would materially affect the risk. Gladys Golden, the witness above, referred to, testified as follows:

"Q. Something is said about the reason for rejection,—have you a copy of any record of the reason for rejection? A. Yes.

"Q. What was the reason for rejection? * * *

"Mr. Withington (for appellant): You have a list there that refers—that explains this card? A. Yes.

"Q. This card shows the reason for rejection? A. Yes.

"Q. Will you refer to that list of reasons and show what reason for the rejection in this case was?

"Mr. Kelley (for appellee): Now may I look at it. * * * We are perfectly satisfied. * * *

"A. The reasons are, lung disease, asthma, bronchitis or cough, loss or gain in weight, the other was underweight.

"The Court: Is there any way in which this record, orginal document, can be read into the record?

"Mr. Kelley: I would like it to remain in the case until the case is finished." * *

"Q. This is the Prudential Life Insurance Company's list of impairments, past or present history, confidential list? A. Yes.

"Q. Then on this card, being Defendant's Exhibit No. 1, it names the amount, $2,000, and there are two numbers, 13–41; is that correct? A. Yes.

"Q. Those two numbers, 13–41, refer to the corresponding numbers on that confidential list; is that correct? A. Yes.

"Q. No. 13, as you have already read, reads, lung disease, asthma, bronchitis or cough; is that correct? A. Yes. ·

"Q. It could be in one or all of any two or three of those disorders? A. Yes.

"Q. But it doesn't say which one of those on this card and you don't know? A. No.

"Q. No. 41 reads, loss or gain in weight; over or underweight? A. Yes.

"Q. This doesn't indicate whether this man had lost weight or gained weight, or whether over or underweight, and you do not know? A. No, I do not."

It is true that the doctor was not questioned on the subject of the health of the insured. As I view it, that question is wholly immaterial. But it cannot be said that there was an entire lack of proof on the subject. On the contrary, the uncontradicted testimony of one credible witness was sufficient to establish that the applicant was rejected for the reason stated. The appellee's attorney examined the records of the company produced in court and announced himself as perfectly satisfied. If we assume, as the main opinion does, that the reasons for rejection are material, they are amply proven by the undisputed evidence introduced by the defendant.

With reference to the question of tender, it may be conceded, as stated by the majority, that the tender of the premium to the appellee or her attorney should have included interest. No point was made upon that ground at the time of the tender, or at any subsequent time, until the filing of the amended replication on June 16, 1930. The rule is well settled that one objecting to the suf-

ficiency of a tender of this sort must make the objection at the time of the tender. As stated by the Supreme Court of Illinois, in Thompson v. Crains, 294 Ill. 270, 128 N. E. 508, 12 A. L. R. 931: " * * * The only objection made to this tender at the time was that the amount was not sufficient, and that no question was raised as to its being by certified check or because of the indorsement. The law interprets the conduct of the parties as to a tender according to their apparent intention and determines its sufficiency upon the objections then stated, and silence is considered a tacit waiver of other objections, 1 Sutherland on Damages (4th Ed.) § 273; 26 R. C. L. 638. See, also, to the same effect 28 Am. & Eng. Ency. of Law (2d Ed.) 18, 19, and cases cited; Gradle v. Warner, 140 Ill. 123, 29 N. E. 1118; 12 Ency. of Evidence, 487. This same reasoning applies to the question whether or not the tender was properly made to the trustee instead of to the creditor herself. 1 Sutherland on Damages (4th Ed.) § 265."

This same rule was applied by the Supreme Court of Pennsylvania in Leafgreen v. Labar, 280 Pa. 215, 124 A. 443. To the same effect, see People's Furniture & Carpet Co. v. Crosby, 57 Neb. 282, 77 N. W. 658, 659, 73 Am. St. Rep. 504, where it is said: "When the tender is refused because not deemed sufficient in amount, and absolutely, it cannot be avoided merely because not in lawful money to the precise amount."

In my opinion the judgment should be reversed.